JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* ORANGE CRUSH OF PUERTO RICO, INC., demandada.

Número 55.

*Sometido:* 15 de abril de 1958. *Resuelto:* 25 de abril de 1958.

Hon. Secretario de Justicia J. B. Fernández Badillo (José Trías Monge, ex Secretario de Justicia y Edgar S. Belaval, Procurador Auxiliar, en el alegato) y Ramón Acevedo Oliveras, César J. Dones Magaz y Agustín Mangual Hernández, abogados de la peticionaria; E. Rodríguez Colón, abogado de la demandada.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

En un convenio colectivo entre la Orange Crush of Puerto Rico, Inc. y la Unidad General de Trabajadores de Puerto Rico (U.G.T.), en cuanto al disfrute de vacaciones se convino lo siguiente:

"(1) Las vacaciones no serán acumulativas.

"(2) La Compañía concederá a sus empleados regulares 96 horas de vacaciones al año de trabajo a base de trabajo regular por hora.

"(3) Cuando un trabajador no encuentre quien lo pueda substituir, la Compañía podrá pagarle las 96 horas de vacaciones y continuar empleándolo.

"(4) El plan de vacaciones será preparado por la Compañía.

"(5) Tendrán derecho a las vacaciones aquellos empleados que en el curso del año trabajaron no menos de 2,000 horas; pero aquellos días o semanas que al empleado no se le permita trabajar por razones económicas, o rotura de las maquinarias o cualquier otra eventualidad de la cual no tenga culpa el empleado serán contadas a los fines exclusivos de las vacaciones como si fueran horas trabajadas por el empleado.

"(6) Aquellos obreros que hayan estado ausentes de su trabajo por más de 10 días durante el año anterior, sin excusa justificada alguna, no tendrán derecho a vacaciones.

"(7) Si un obrero que haya adquirido el derecho de vacaciones cesare en su trabajo, tendrá derecho a la parte proporcional que le corresponda."

El señor Ángel Luis Santos trabajó para la Orange Crush of Puerto Rico, Inc., desde el 4 de abril de 1955 hasta el 17 de enero de 1956, un total de mil novecientos noventa y dos horas. Cuando reclamó sus vacaciones el patrono le alegó que no habiendo el empleado trabajado las dos mil

horas que establecía el inciso 5 de la cláusula IX del convenio colectivo, anteriormente transcrito, no tenía derecho a tales vacaciones. El empleado alegaba, por el contrario, que habiendo él cesado en su trabajo antes de completar las dos mil horas, tenía derecho a la parte proporcional que resultaba entre las dos mil horas que establecía el convenio y las mil novecientas noventa y dos horas por él trabajadas, de acuerdo con el inciso 7 de la cláusula IX. De acuerdo con el procedimiento provisto en el mismo convenio colectivo el caso fué sometido a arbitraje, nombrándose al señor Rafael A. Berríos López, de la División de Arbitraje Obrero del Departamento del Trabajo, quinto miembro.

La cuestión sometida al árbitro fué la siguiente: "determinar si el empleado Ángel Luis Santos tiene derecho o no a recibir la parte proporcional que alegadamente le corresponde a la luz del convenio colectivo en vigor y específicamente del artículo IX sobre vacaciones". El árbitro entendió que el caso era "uno típico de interpretación de los términos del convenio colectivo", y en este entendimiento, dictó su laudo determinando que el empleado Ángel Luis Santos tenía derecho a recibir la parte proporcional de vacaciones que le correspondía hasta el momento de renunciar su puesto.

En la forma menos elaborada posible, el razonamiento del árbitro podría presentarse de la manera siguiente: el inciso 5 de la cláusula IX contempla *el disfrute de vacaciones* como tales, mientras que el inciso 7 de la misma cláusula contempla la *compensación de vacaciones* que no llegan a disfrutarse; en el primer caso, *el derecho al disfrute* surge después de haber trabajado el empleado dos mil horas, mientras que en el segundo, *el derecho a la compensación* surge tan pronto el empleado adquiere su permanencia; el límite de las dos mil horas persigue el propósito de desalentar las ausencias sin justa causa pero no persigue confiscar la parte proporcional a que tendría derecho el empleado al cesar en su trabajo. Este razonamiento coincide con lo resuelto por nosotros, como cuestión de derecho, al interpretar cláusulas

análogas a la presente, en distintos decretos mandatorios: *Rivera* v. *Tribunal de Distrito*, 72 D.P.R. 741 (Negrón Fernández), (1951), cita precisa a la pág. 744; *Fernando Sierra Berdecía* v. *Antonio Santos*, resuelto *per curiam* el 18 de noviembre de 1957.

En su contestación ante nos, la recurrida alega que: 1—el "árbitro cometió errores crasos de derecho al emitir su laudo, dando lugar con ello a una conducta impropia"; 2—el "árbitro cometió errores de derecho al querer fallar su laudo de acuerdo a la ley"; y 3—el "laudo emitido es nulo por ser contrario a la política pública."

■■ En síntesis lo que alega la recurrida es que "si el obrero Ángel Luis Santos hubiera trabajado cualquier cantidad" (de horas) "en exceso de las 2,000 horas entonces sí que hubiera tenido la parte proporcional de vacaciones a que tenía derecho al cesar de trabajar". Como se ve, cualquiera de las dos hipótesis puede ser objeto de una acuciosa argumentación. Mas nuestra autoridad en este momento para dejar sin efecto un laudo de arbitraje rendido en virtud de un acuerdo autorizado por convenio colectivo, es sumamente limitada. En ausencia de fraude, conducta impropia, falta del debido procedimiento en la celebración de la vista, violación de la política pública, falta de jurisdicción o dejar de resolver todas las cuestiones sujetas a controversia, —*Junta de Relaciones del Trabajo* v. *New York and Porto Rico Steamship Co.*, 69 D.P.R. 782, (Snyder), (1949), cita precisa a la pág. 800—carecemos de autoridad para anular un laudo de arbitraje "por meros errores de criterio, ya sean éstos en cuanto a la ley o en cuanto a los hechos". Casualmente lo que persiguen los estatutos de esta naturaleza es situar fuera de la sutileza jurídica y dentro del sano juicio del amigable componedor, las disputas obrero-patronales.

■ No creemos que en este caso el árbitro cometiera ningún error craso de derecho, como alega la recurrida. Como cuestión de realidad, a él lo que se le sometió fué una

simple *interpretación* de una cláusula del convenio colectivo. El hecho de que contrastara unas cláusulas del convenio colectivo con otras, o unos incisos de una cláusula con otros, no equivale a transformar una cuestión de hecho en una cuestión de derecho. Que el análisis sea parecido al que se sigue por los peritos de la ley no constituye conducta impropia de su parte, ya que se trata de un método universal y válido, que puede utilizarse indistintamente en una adjudicación judicial o en una adjudicación arbitral. Por las razones expuestas creemos además que el laudo emitido no resulta contrario a la política pública.

*Debe ponerse en vigor dicho laudo.*

El Juez Asociado señor Serrano Geyls no intervino.