SEAFARERS INTERNATIONAL UNION PUERTO RICO DIVISION WELFARE PLAN, peticionaria, v. TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. ANGEL M. UMPIERRE, JUEZ, demandado.

*Número:* C–62–48    *Resuelto:* 18 de diciembre de 1962

*Sarah Torres Peralta, Ginoris Vizcarra* y *Federico Rodríguez Pagán,* abogados de la peticionaria; *Harry B. Llenza,* abogado de la interventora, Valencia Baxt Express, Inc.

Sala integrada por el Juez Asociado Señor Hernández Matos como Presidente Accidental de Sala y los Jueces Asociados Señores Santana Becerra y Blanco Lugo.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En 24 de octubre de 1960 la Seafarers International Union Puerto Rico Division Welfare Plan radicó demanda enmendada contra Valencia Baxt Express, alegando que la demandada tenía que aportar la cantidad de diez centavos por cada hora regular de trabajo de sus empleados para ingresarla en el *"welfare plan"* demandante y que por tal concepto, la demandada adeudaba $16,403.65 distribuidos así: febrero, 1960—$2,501.20; marzo—$2,640.53; abril—

$3,277.68; mayo—$2,691.33; junio—$2,647.53 y julio, 1960 —$2,645.38. Alegó también que de acuerdo con el contrato del Plan de Bienestar "firmado" por la demandante y la demandada, ésta venía obligada a pagar los honorarios de abogado en caso de mora en el pago de su aportación al Plan y solicitó sentencia por $16,403.65 más las costas y $3,000 como honorarios del abogado utilizado por la demandante.

En su contestación a la demanda enmendada la demandada aceptó su obligación de aportar diez centavos por hora regular de trabajo para el Plan de Bienestar bajo el convenio colectivo firmado entre las partes, pero alegó que en la cláusula XVI de dicho convenio se dispuso que la Unión convenía en no hacer acuerdos con ninguna otra compañía o patrono en términos más favorables que los concedidos a la demandada, y que en caso que la Unión hiciera un contrato más favorable, el convenio se entendería enmendado, a discreción de la demandada como patrono, para incluir aquellos términos más favorables; y de surgir una disputa en cuanto al contenido de este párrafo, la misma sería sometida al procedimiento de quejas y agravios y a arbitraje. En relación con lo antes expuesto, alegó la demandada que la demandante celebró convenios colectivos con varias otras firmas a que hizo mención en términos más favorables en virtud de los cuales los patronos venían obligados a aportar al Plan de Bienestar solamente la cantidad de seis centavos durante el período de julio a diciembre de 1959 y siete centavos a partir de enero 1ro. de 1960. Que de acuerdo con el convenio colectivo ella tenía el derecho a reajustar sus aportaciones a seis y siete centavos respectivamente, y como consecuencia de dicho reajuste, debía a la demandante la suma de $963.85 hasta julio de 1960, cantidad que consignó en la Secretaría del Tribunal con su contestación.

Del Acta de una conferencia celebrada con antelación al juicio que aparece de los autos, surgen los siguientes hechos: (1) Se eliminó la reclamación de $2,501.20 por el mes de

febrero, 1960. (2) Se dispuso que la controversia quedaba limitada a determinar si la demandada venía obligada a contribuir al Plan con diez centavos, o si sólo con seis centavos hasta el 31 de diciembre de 1959 y siete centavos del 1ro. de enero en adelante. (3) Que de ser diez centavos, la suma reclamada por la demandante era correcta. (4) Que de ser siete centavos se adeudaría la cantidad de $9,689.70 de marzo a julio de 1960. (5) Aceptaron las partes que no habían sometido la controversia a arbitraje. (6) Aceptó la demandante la alegación en la contestación al efecto de que había celebrado convenios con otros patronos en términos más favorables, en la forma expresada en dicha contestación. Esta Acta tiene fecha 5 de diciembre de 1960. El caso en los méritos quedó señalado para el 9 de marzo de 1961 pero el juicio no se celebró.

En diciembre 27, 1961 la demandante radicó una moción solicitando permiso para presentar demanda suplementaria. En dicha demanda suplementaria alegó que en 10 de agosto de 1961 había entrado en vigor un nuevo convenio colectivo entre las partes en virtud de un laudo de arbitraje en el cual se había dispuesto que retroactivamente al 1ro. de diciembre de 1960, la demandada debería pagar al Plan cantidades que ascendían a $30,000; que dicha deuda aumentaría a razón de $3,000 mensuales y estaba vencida, era líquida y exigible. Alegó en la alternativa que al amparo del anterior convenio colectivo vencido el 30 de noviembre de 1960, la cláusula sobre el Fondo de Bienestar continuó en vigor después de la expiración de dicho convenio y hasta la negociación del nuevo, de 10 de agosto de 1961. Que por tal concepto la demandada adeudaba la suma de $27,000 desde el 22 de octubre de 1960 hasta esa fecha. A la demanda suplementaria se opuso la demandada alegando que el Tribunal no tenía jurisdicción por cuanto la contienda debía ser sometida a arbitraje de acuerdo con el convenio colectivo. Que la demandante había acudido a la Junta de Relaciones del Trabajo con cargos sobre

esta aportación, que fueron desestimados entre otras razones por existir cláusulas de arbitraje. También alegó que el laudo de arbitraje de 10 de agosto de 1961 en el cual descansaba la demandante en su demanda suplementaria estaba siendo impugnado en cuanto a su validez en otro pleito ante la propia Sala de San Juan del Tribunal Superior, sobre sentencia declaratoria, # 61–6533. (¹)

En 28 de febrero de 1962 la Sala sentenciadora dictó Resolución sosteniendo que el Fondo de Bienestar *"welfare fund"* tenía capacidad para hacer la reclamación como entidad independiente; y a la luz de las cláusulas II, V y XVI del convenio, falló que había una controversia entre las partes en cuanto a la suma que la demandada debía aportar a dicho Fondo que debía determinarse por arbitraje, que la causa de acción de la demandante surgía después que hubiera el laudo de un árbitro, y sólo se podría invocar la jurisdicción del tribunal para hacer efectivo dicho laudo. Concedió diez días a la demandante para enmendar la demanda suplementaria alegando la existencia del laudo. De no existir el mismo no procedía la acción.

En 19 de marzo de 1962 la demandante radicó una demanda suplementaria enmendada, reproduciendo las alegaciones de la demanda enmendada de "22 de octubre de 1961". (*) Expuso esta vez en adición a lo alegado en la demanda suplementaria original, que ella era persona distinta de las partes en el convenio colectivo, por lo que no se le aplicaba la cláusula de arbitraje contenida en el mismo, y que de aplicársele, no era posible someter el asunto a arbitraje bajo el convenio vencido en 30 de noviembre de 1960

---

(¹) En el expediente hay constancia de una resolución de la Junta de Relaciones del Trabajo desestimando una querella de la Unión por violación al convenio colectivo entre febrero y el 30 de noviembre de 1960, por haber reducido la demandada las aportaciones al Fondo de Bienestar. La querella se desestimó porque la querellante no había sometido la disputa a través del mecanismo de quejas y agravios creado por el convenio colectivo.

(*) La demanda enmendada es de 24 de octubre de 1960.

por no existir desde esa fecha comité de arbitraje alguno; que tampoco le era posible someterlo a arbitraje bajo el convenio de 10 de agosto de 1961 por haberse negado la demandada a aceptar las cláusulas del mismo y haber radicado procedimientos en corte impugnándolo.

En esta misma fecha la demandante solicitó la reconsideración de la Resolución de 28 de febrero alegando la imposibilidad de someter la cuestión a arbitraje en cuanto al convenio que expiró en 30 de noviembre de 1960 por no existir comité alguno y en cuanto al de 10 de agosto de 1961 por no ser ella parte en el mismo y por la negativa de la demandada a cumplir con dicho convenio. En 30 de marzo de 1962 la demandante radicó una segunda demanda suplementaria enmendada en iguales términos pero incluyendo en el epígrafe como parte demandante los nombres de seis personas en su capacidad de síndicos del Plan y en representación de éste. La moción de reconsideración fue declarada sin lugar en 26 de abril de 1962. Expedimos *certiorari* para revisar dichas Resoluciones. Un estudio detenido de la controversia nos lleva al convencimiento que el auto de *certiorari* expedido debe ser anulado.

En 22 de junio de 1959 la Seafarers International Union of North America—Atlantic & Gulf District (Puerto Rico Division), la Unión, y el Patrono la demandada Valencia Baxt Express firmaron un convenio colectivo con efecto desde el 1ro. de junio de 1959 hasta el 30 de noviembre de 1960, sujeto a seguir en vigor a menos que 60 días con anterioridad a esta última fecha cualquiera de las partes notificara su deseo de terminarlo. En la cláusula XI se convino en que el Patrono se obligaba a establecer un Fondo de Bienestar *"welfare fund"* a tenor de la Ley de Relaciones Obrero-Patronales. A tal efecto la Unión designaría un síndico, otro el Patrono y un tercer síndico a ser nombrado por estos dos. La demandada como patrono se obligó a aportar la suma de diez centavos por cada hora regular trabajada por cada uno

de sus empleados hasta un máximo de cuarenta horas de trabajo en cualquier semana. Se dispuso en la cláusula XVI de dicho convenio que la Unión se comprometía a no entrar en convenio alguno con cualquier otra compañía o patrono que empleara trabajadores como los incluidos en este convenio en términos más favorables, y que de ocurrir tal cosa, a opción del Patrono este convenio se entendería enmendado a base de esos términos más favorables. Termina la cláusula XVI manifestando que si surgía una controversia en cuanto a los términos de esta cláusula, la misma sería sometida al procedimiento de quejas y agravios y arbitraje, según dispuesto en el propio convenio. En la cláusula V titulada "Arbitraje" se convino que todas las disputas, controversias y diferencias en cuanto a la interpretación o aplicación de cualquiera de las disposiciones del convenio se decidirían mediante arbitraje, y a tal efecto se creó entonces un comité y se dispuso todo lo referente a los procedimientos ante el mismo y se convino que el laudo de arbitraje sería final y obligatorio para el Patrono, la Unión *y los empleados*, y podría hacerse cumplir en cualquier corte de jurisdicción competente.

Si se considera la demanda enmendada radicada el 24 de octubre de 1960, antes de expirar el convenio colectivo a que se ha hecho referencia, en la cual el Fondo de Bienestar reclamó a la demandada cantidades por los meses de marzo a julio de 1960, también antes de expirar dicho convenio colectivo, y si se toma en cuenta la aceptación del Fondo demandante en la conferencia previa al juicio al efecto de que la Unión había hecho contratos con otras compañías en términos más favorables, siendo la cuestión litigiosa la de si la demandada debía aportar al Fondo a razón de diez, siete o seis centavos por hora de trabajo, no cabe la menor duda que la controversia envuelta era una típica para ser sometida al procedimiento de arbitraje del convenio colectivo

y no podía invocarse de primera intención la jurisdicción del Tribunal Superior, a menos que hubiera habido un laudo.

Las demandas suplementarias, no obstante, presentan algunos aspectos adicionales. La demandante reclama en las mismas la cantidad de $30,000, basándose en que el 10 de agosto de 1961, ya expirado el convenio anterior, se emitió un laudo de arbitraje que tenía el efecto de un nuevo convenio, en el cual se dispuso que la demandada venía obligada a aportar a dicho Fondo la cantidad de ocho centavos y medio por hora de trabajo. A este laudo se le dio efecto retrospectivo a partir del 1ro. de diciembre de 1960. Sin embargo, esta disposición contenida en el laudo de agosto 10, 1961 así retroactivo no es el resultado de un procedimiento de arbitraje al cual las partes debían haber sometido la controversia específica en cuanto a las cantidades a ser aportadas al Fondo. De la faz de este laudo de 10 de agosto de 1961 surge que el mismo se emitió en virtud de una *sumisión* en circunstancias distintas, y por otras motivaciones, no a base de esta controversia, ni el laudo fijando ocho centavos y medio pretendió resolver la misma. Además de que este laudo de 10 de agosto de 1961 a la fecha de las demandas suplementarias estaba siendo impugnado en cuanto a su validez en la propia Sala del Tribunal Superior, este Tribunal en 25 de octubre de 1962, y en el caso de *Junta de Relaciones del Trabajo de Puerto Rico a nombre y en representación de Seafarers International Union, etc. v. Valencia Baxt Express*, JRT-62-2, se negó a poner en vigor judicialmente dicho laudo por las consideraciones que expuso.

La demandante alega en las demandas suplementarias, en la alternativa, que la demandada adeudaba al Fondo $27,000 desde el 22 de octubre de 1960 al amparo del convenio vencido el 30 de noviembre de 1960, a base de que la cláusula sobre el Fondo de Bienestar del convenio colectivo anterior seguía en vigor aún después de su expiración y hasta que se negociara otro nuevo, lo cual había ocurrido en 10

de agosto de 1961. Sostiene que a ella le era imposible someterse al procedimiento de arbitraje en lo que respecta a este período por no existir comité alguno de arbitraje a partir del 30 de noviembre de 1960, cuando expiró el convenio, y por no haber tampoco aceptado la demandada el laudo de 10 de agosto de 1961. ■

Es correcto que el convenio dispuso en su cláusula final que durante la negociación de cualquier nuevo convenio colectivo la demandada, como patrono, mantendría las condiciones económicas dispuestas en el mismo, y la Unión no iría a una huelga. Entre las condiciones económicas puede aceptarse que está la disposición que obligaba a aportar al Fondo de Bienestar. Bajo una interpretación racional del convenio de modo que se dé entera efectividad y cumplimiento a la voluntad de las partes a través de todas sus cláusulas, es lógico concluir que si sus disposiciones en cuanto a la obligación de aportar a este Fondo se extendían después de su expiración y hasta que se hiciera un nuevo acuerdo, la cláusula referente a la manera de resolver las controversias en torno a dichas aportaciones tenía igualmente que quedar en pie, después de la expiración del acuerdo. Las cláusulas pertinentes, —XI y XVI—son una e indivisible en lo que respecta a la voluntad de las partes. No podemos, por lo tanto, convenir con la demandante y peticionaria ante nos en que a partir del 30 de noviembre de 1960 ella carecía del mecanismo de arbitraje acordado en el convenio. ■

También sostiene la demandante aquí peticionaria que ella no podía acogerse al mecanismo de arbitraje por cuanto el Fondo de Bienestar es una entidad jurídica distinta y separada de la Unión, y como tal entidad separada ella no fue parte en el convenio colectivo. Tampoco podemos convenir en ello con la demandante. Aceptando que el Fondo tiene interés o personalidad propia para demandar reclamando sus aportaciones, el mismo es una criatura nacida del convenio colectivo entre la Unión y el Patrono, y no deriva

derecho o causa de acción de fuente otra alguna que no sea del propio convenio. Si éste dispuso que las controversias en cuanto a esas aportaciones han de dilucidarse en forma definitiva mediante arbitraje, es inevitable concluir que el Fondo, ya se le reconozca o no personalidad separada para reclamar, queda igualmente obligado por esa disposición del convenio negativa de una causa de acción judicial ante las cortes. ▪

No se requiere de extensa glosa jurídica para repetir lo que ya es conocida norma, que impide a los tribunales entender en primera instancia sobre los méritos de una controversia cuando las partes han acordado que se resuelva mediante arbitraje. Tanto para hacer valer la voluntad contractual de las partes cuando ello no resulte contrario al orden o interés público o cuando no se derroten los fines y propósitos de alguna otra norma legislativa de interés general—Cfr: *Wilco* v. *Swan*, 346 U.S. 427, 435–438, —como para hacer valer una bien definida política pública que alienta esta manera más sencilla, menos formal y más pronta de solucionar controversias entre los ciudadanos que ofrece el arbitraje—particularmente las que surgen de convenios colectivos en la esfera de la relación obrero-patronal por lo que el convenio colectivo es y significa para las fuerzas de producción social—los acuerdos sobre arbitraje deben hacerse cumplir de manera estricta si la *sumisión* es clara y libre de ambigüedad en cuanto a la voluntad de las partes en ese sentido. Cfr: *Junta de Relaciones del Trabajo* v. *New York & Porto Rico Steamship Co.*, 69 D.P.R. 782; *Junta de Relaciones del Trabajo* v. *Soc. Mario Mercado e Hijos*, 74 D.P.R. 403; *Junta de Rel. Trabajo* v. *Orange Crush of P. R.*, 80 D.P.R. 292; *Autoridad sobre Hogares* v. *Tribl. Superior*, 82 D.P.R. 344 y casos ahí citados.(²) La jurisprudencia

---

(²) Véase la Ley española sobre arbitrajes de Derecho Privado de 22 de diciembre de 1953 que sustituyó las viejas disposiciones sobre arbitraje de la Ley de Enjuiciamiento Civil de 1881—Medina y Marañón, *Leyes Civiles de España*, 1958—con la convincente expresión del papel

federal interpretativa de las leyes del trabajo en el área Nacional ya no deja dudas sobre estas normas, reconociéndole a las cortes federales facultad para decretar el *cumplimiento específico* de cláusulas de arbitraje obligando a las partes a someterse al mismo. Cfr: *Local 205, United Electrical etc.* v. *General Electric,* (C. A. 1) 233 F.2d 85, confirmado en *General Electric* v. *Local 205,* 353 U.S. 547; *Textile Workers* v. *Lincoln Mills,* 353 U.S. 448; y casos ahí revisados: *Dowd* v. *Courtney,* 368 U.S. 502; *Teamster Local* v. *Lucas Flour Co.,* 369 U.S. 95; *Retail Clerks* v. *Lion Dry Goods,* 369 U.S. 17. ▮

Según anotamos hace poco al decidir el *caso JRT–62–2* antes mencionado, no tenemos estatuto sobre arbitraje obrero-patronal. (³)   Nuestra Ley 376 de 8 de mayo de 1951 que reglamenta el arbitraje comercial expresamente dispone que no se aplica al arbitraje entre patronos y empleados. Resolviendo problemas surgidos en esta área, hemos venido aplicando normas que rigen el arbitraje en general.   Aunque sea nada más que como ilustración de lo decisivo de la política pública legislativa a que hemos hecho referencia, cabe apuntar que la Ley 376 dispuso todo un procedimiento integrado ante el Tribunal Superior para obligar a las partes a someterse a arbitraje, y para suspender cualquier acción o procedimiento judicial en torno a una cuestión que debiera someterse a arbitraje, hasta tanto se proceda con éste.

*Fue correcta la decisión de la Sala sentenciadora objeto de este recurso y repetimos, el auto de certiorari expedido debe anularse.*

---

importante que en estos tiempos juega la institución del arbitraje como un medio social conveniente para dirimir conflictos e intereses en choque sin acudir al poder coercitivo de los tribunales, que aparece en la exposición que antecede a la publicación de dicha Ley de 1953 en la Enciclopedia Jurídica Española, Apéndice, 1953, pág. 105.

(³) La Ley 142 de 30 de junio de 1961 sólo cubre ciertas corporaciones públicas del Gobierno que antes estaban incluídas en el Servicio Exento y luego ingresaron en el Servicio por Oposición.