Negroni Cintrón, Juez Ponente
*1305 TEXTO COMPLETO DE LA SENTENCIA
I
Inconforme con el dictamen emitido el 31 de octubre de 1994 por el Tribunal Superior, Sala de San Juan, en el caso Civil Número 94-549(905), el Condado Plaza Hotel & Casino, en adelante el "Condado Plaza", recurre ante nos para que lo revisemos mediante el recurso que instó ante este Foro el 8 de mayo de 1995. 
En la Sentencia recurrida el tribunal de instancia se negó a revocar parcialmente un laudo emitido por un árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, en lo sucesivo el "árbitro", que adjudicó una querella formulada por la recurrida Unión Gastronómica Local 610, ex reí. Luis A. González, en adelante la "Unión", contra el Condado Plaza. En el laudo impugnado el árbitro concluyó que el unionado de referencia fue justificadamente despedido de su empleo por el Condado Plaza, pero dispuso, además, que éste patrono tenía que pagarle al unionado los salarios que dejó de percibir desde la fecha de su despido hasta la fecha del laudo. Basó este dictamen en que el Condado Plaza no cumplió con la obligación que le imponía el convenio colectivo suscrito por éste y la unión de notificarle por escrito al unionado despedido las razones para cesantearlo, dentro del término de cinco (5) días del despido. El Condado Plaza impugnó esta última parte del laudo ante el tribunal recurrido con el resultado que hemos adelantado.
Examinada la petición y los autos, expedimos resolución para que la unión mostrara causa por la cual no debíamos expedir el auto solicitado, revocar la sentencia recurrida y modificar parcialmente el laudo emitido el 23 de marzo de 1994. Oportunamente la Unión compareció ante nos y expuso su posición en tomo a los méritos del recurso instado.
II
Encontrándonos en condición de dictaminar, luego de un cuidadoso análisis del recurso instado a la luz del derecho aplicable y la jurisprudencia interpretativa, resolvemos según intimamos. Resulta prudente que consideremos primeramente el trasfondo fáctico de la controversia ante nos para ubicar en razonable perspectiva nuestro dictamen.
*1306 El unionado Luis E. González fue despedido de su empleo por el Condado Plaza en las circunstancias que más adelante expondremos. Conociendo la razón del despido, la unión que lo representaba utilizó el trámite de quejas y agravios acordado en el convenio colectivo. Finalizado este trámite el unionado despedido solicitó la intervención del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos para dilucidar su despido. Ante el árbitro designado se celebró la vista evidenciaría correspondiente al tenor del siguiente acuerdo de sumisión:,

"Que el árbitro determine si el despido del querellante estuvo o no justificado. De no estarlo que el árbitro provea el remedio adecuado."

Recibida la prueba presentada en la vista, el árbitro emitió el laudo correspondiente. En éste el árbitro consignó los siguientes hechos sobre los cuales no existe controversia alguna:

El día 5 diciembre de 1992 el señor José García Santiago, quien es empleado unionado y trabaja como "general utility" en la cafetería del Hotel, tenía un turno de trabajo asignado desde las 6:00 P.M. a las 2:30 A.M.

Este declaró que al concluir su tumo de trabajo permaneció por aproximadamente cuarenticinco (45) minutos en los predios de la Compañía y que al salir, un compañero de trabajo del parking de la Discoteca Isadora le dijo que el señor Luis A. González, en adelante denominado el querellante, lo estaba esperando. Declaró el señor García que el querellante se le acercó y le dijo que "a los sapos había que enterrarlos" y que "tenía una ametralladora en el carro".

El señor García declaró que el querellante lo agarró por su camisa, lo haló hacia el estacionamiento y lo agredió en la cara y que el señor Luis Grillo, quien trabajaba como encargado del estacionamiento del Hotel Regency intervino para evitar la agresión.

Que luego de sucedidos estos hechos el querellante se marchó del lugar y el señor García regresó al Hotel donde presentó una querella.

Al otro día el señor García y el querellante se presentaron a la oficina del supervisor Ruiz Díaz y éste los suspendió a ambos durante dos (2) semanas.

Posteriormente el señor García fue reinstalado y le fueron pagadas las dos semanas que había estado suspendido. Ello de conformidad con la investigación que hizo el Hotel en la cual se determinó que el querellallte había sido el agresor y que el señor García no había provocado la agresión.

Al cabo de dichas semanas se despidió al querellante de su empleo por la alegada agresión acaecida contra el señor García.

Finalmente surgió de los hechos que al querellante nunca se le dio una carta de despido donde se le explicaran las razones y la fecha de efectividad de esa decisión". (Apéndice de la Solicitud de Certiorari, págs. 5-7.)
Partiendo de los hechos antes consignados, el árbitro concluyó que el despido del unionado estuvo justificado. Apartándose de lo expuesto por las partes en el acuerdo de sumisión dictaminó que el Condado Plaza incumplió con la obligación que contrajo en el convenio colectivo que suscribió con la unión de notificarle por escrito al unionado despedido dentro de los cinco (5) días de tomada la acción, las razones que tuvo para cesantearlo y condenó al Condado Plaza a satisfacerle al querellante el salario que dejó de devengar desde la fecha que en fue cesanteado hasta que se emitió el laudo. Inconforme el Condado Plaza recurrió al Tribunal de Primera Instancia, Sala Superior de San Juan, para que revisase ésta última parte del laudo, el cual emitió el dictamen que se recurre ante nos,
Aunque reconoció la reiterada norma de que la jurisdicción del árbitro emana del acuerdo de sumisión, el tribunal de instancia confirmó el laudo impugnado en todas sus partes. En su sentencia rechazó atarse a lo que consideraba que era una interpretación literal de tal norma. Aunque aceptó que la compensación concedida al unionado despedido no se contempló expresamente en el acuerdo de sumisión, ratificó la compensación impuesta debido a que el árbitro concluyó que el Condado Plaza *1307 había violado el debido proceso de ley del unionado en su aspecto procesal, según dispuesto en el convenio colectivo. Dictaminó, en síntesis, que al así actuar el árbitro no erró, pues al imponerle la sanción al Condado Plaza el árbitro estaba validando el despido prospectivamente a partir de la fecha del laudo y no desde la fecha en que efectivamente el Condado Plaza despidió al unionado. Razonó que tal remedio era uno apropiado en el balance de intereses, pues eliminó el perjuicio causáHo por la violación al derecho del empleado a recibir por escrito las razones del despido, a pesar de que no describe de forma alguna en que consistió el alegado perjuicio.
Inconforme con este dictamen el recurrente nos señala que el tribunal de instancia incurrió en los siguientes errores:

"A. Erro [sic] el Honorable Tribunal al resolver que el árbitro actuó con jurisdicción al ordenar "paga retroactiva" al empleado despedido, a pesar de haber sostenido el despido.

B.Erro [sic] el Honorable Tribunal al sostener la validez de un laudo que es contrario a la política pública al compensar al empleado despedido (agresor) por la comisión de este [sic] de un delito público.

C.Erro [sic] el Honorable Tribunal al sostener la validez de un laudo que resulta ser contrario a la política pública, específicamente, al aplicar a la empresa privada principios del servicio de mérito y otros derechos constitucionales que cobijan a los empleados públicos, contrario a lo dispuesto en Narváez v. The Chase Manhattan Bank, 120 D.P.R. 731 (1988)."

Por entender que el primer error señalado fue cometido y éste por sí solo dispone del recurso instado ante nos pasamos a considerarlo y adjudicarlo.
m
La Ley de Relaciones del Trabajo, Ley Núm. 130 del 8 de mayo de 1945, según enmendada, 29 L.P.R.A., sec. 61 et seq. no reglamenta el arbitraje obrero patronal. Tampoco existe legislación específica en tal sentido. Seaferers Inter'l Union v. Tribunal Superior, 86 D.P.R. 803 (1962); J.R.T. v. Valencia Baxt, 86 D.P.R. 282 (1962). En tales circunstancias, el arbitraje obrero-patronal se rige por los principios generales que rigen la materia de arbitraje, J.R.T. v. N.Y. & P.R. Steamship Co., 69 D.P.R. 782 (1949).
En el ámbito de las relaciones obrero patronales de ordinario la obligación de someter controversias a arbitraje emana del convenio de negociación colectiva. Tanto la cláusula de arbitraje convenida como el acuerdo de sumisión definen los límites de la jurisdicción del árbitro. En particular, el acuerdo de sumisión es el que contiene la pregunta que debe ser resuelta, el remedio deseado, así como el árbitro o la junta de arbitraje que las partes han seleccionado. Define los asuntos que han de ser decididos y, por ello, también controla el ámbito de la autoridad del árbitro al decidir la controversia. Como resultado de todo lo antes expuesto, los acuerdos de sumisión son cuidadosamente negociados por las partes, pues la forma en que el asunto se presente puede afectar sustancialmente su resultado. 
De ordinario el árbitro está obligado no sólo por el acuerdo de sumisión sometido por las partes, sino también por el remedio solicitado. Cf. Leather Goods Workers Local 66 v. Neevel Luggage Mfg. Co., 325 F. 2d. 992 (1964). Centralob v. Electrical Workers (IUE) Local 816, 827 F.2d. 1210 (1987).
En Puerto Rico se ha reconocido también que la autoridad para entender en un procedimiento de arbitraje emana del convenio colectivo existente entre el patrono y la unión o del acuerdo de sumisión. Autoridad de Edificios Públicos v. U.I.E. de la A.E.P. Op. del 30 de junio de 1992,_D.P.R._ (1992), 92 JTS 106; J.R.T. v. Vigilante, Inc. Op. del 6 de marzo de 1930, D.P.R._(1990), 90 JTS 30; J.R.T. v. Corporación de Crédito Agrícola, 124 D. P. R. 846 (1989). El acuerdo de sumisión y el convenio colectivo regulan el procedimiento de arbitraje y la jurisdicción del árbitro sobre la materia a adjudicarse. Colon Molinary v. A.A.A., supra.
Tanto el procedimiento de arbitraje como los laudos emitidos en el campo laboral disfrutan de una gran deferencia y respeto por parte de los tribunales. J.R.T. v. Junta Admi. Muelles de Ponce, 122 *1308 D.P.R. 318, 325 (1988). Esta confianza ha servido de apoyo al desarrollo de una doctrina de autorestricción judicial que postula que los laudos no deben ser revisados por los tribunales a menos que se demuestre la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en disputa o que sea contrario a la política pública. S.I.U. de Puerto Rico v. Otis Elevator Co., 105 D.P.R. 832, 836 (1977); J.R.T. v. Hato Rey Psychiatric Hospital, 119 D.P.R. 62, 68 (1987); J.R.T. v. Junta Adm. Muelle Municipio de Ponce, supra.
No obstante ello, ésta tiene su excepción. La autorestricción de los tribunales debe ceder cuando el convenio o el acuerdo de sumisión, según sea el caso, consigna expresamente que el laudo debe ser resuelto conforme al derecho aplicable. S.I.U. de Puerto Rico v. Otis Elevator Co., supra, pág. 837; J.R.T. v. Orange Crush de Puerto Rico, 80 D.P.R. 292, 295 (1958). Esto implica que cualquiera de las partes puede recurrir ante el foro judicial para impugnarlo y revisar su corrección y validez jurídica. J.R.T. v. Hato Rey Psychiatric Hospital, supra, quedando el tribunal autorizado a revocar un laudo si el árbitro erró en la aplicación del derecho. U.I.L de Ponce v. Destilería Serrallés, Inc., 116 D.P.R. 348, 352 (1985).
Finalmente debe tenerse presente que los acuerdos sobre arbitraje deben hacerse cumplir de manera estricta si la sumisión es clara y libre de ambigüedades. J.R.T v. Otis Elevator Co., 105 D.P.R. 195, 202 (1976).
IV
Surge de los autos ante nuestra consideración que las partes suscribieron un convenio colectivo en el cual estipularon someter a arbitraje controversias como la surgida entre las partes. Acordaron, además, que el laudo del árbitro sería final y firme y obligatorio para las partes, pero siempre que el mismo se emitiera conforme a derecho. 
Como señalamos con anterioridad, el acuerdo de sumisión de las partes disponía de forma clara y precisa la controversia que el árbitro debía adjudicar al disponer lo siguiente:

"Que el árbitro determine si el despido del querellante estuvo o no justificado. De no estarlo el árbitro provea el remedio adecuado."

En su laudo el árbitro concluyó que el despido del querellante estuvo justificado de conformidad con lo acordado en la sumisión, pero concluyó, además, que como el Condado Plaza incumplió con su obligación de notificarle por escrito al querellante las razones de su despido dentro de los cinco (5) días que para ello proveía el convenio colectivo, debía pagarle al unionado el salario dejado de percibir desde que fue despedido hasta la fecha en que se emitió el laudo.
Al impugnar parcialmente el laudo ante el tribunal de instancia y ante nosotros, el Condado Plaza específicamente alega, entre otras cosas, que el árbitro actuó sin jurisdicción al ordenar la "paga retroactiva" de salarios y que se había excedido en la autoridad que las partes le confirieron en el acuerdo de sumisión. Tiene razón.
El ámbito de autoridad del árbitro para decidir el caso ante su consideración estaba precisado por el acuerdo de sumisión antes transcrito, por lo que la autoridad de éste estaba limitada a determinar exclusivamente si el despido del querellante estaba o no justificado y de concluir que no lo estaba, proveer un remedio. Una vez el árbitro determinó que el despido estuvoía adjudicar era si el despido del querellante estuvo justificado o no; ninguna otra.
Del texto del acuerdo de sumisión surge con meridiana claridad que el árbitro tenía facultad para imponer un remedio, solamente si determinaba que el despido había sido injustificado. Adjudicado que el despido del señor Luis A. González había sido justificado, el árbitro resolvió la totalidad de la controversia sometida ante su consideración y aquella parte del laudo que le ordenó al Condado Plaza a satisfacerle retroactivamente al querellante el salario que había dejado de devengar desde la fecha de su despido hasta la fecha en que el árbitro emitió su dictamen, ciertamente fue emitido sin la autoridad que las partes acordaron conferirle al árbitro.
*1309 Independientemente de que fuese cierto que el Condado Plaza incumplió su obligación de notificarle al unionado despedido las razones para su cesantía, el acuerdo de sumisión en el caso que nos ocupa no le sometió al árbitro para su consideración y adjudicación esa materia. Más aún, resulta evidente de los autos que al momento de suscribirse el acuerdo de sumisión tal incumplimiento era del conocimiento de las mismas partes que negociaron y acordaron la materia que se le sometería a la consideración del árbitro.
El acuerdo de sumisión examinado en el caso que nos ocupa no es ambiguo o confuso; por el contrario es claro y preciso. En estas circunstancias, el tribunal de instancia debió velar porque se cumpliera estrictamente el acuerdo de sumisión. J.R.T. v. Otis Elevator Co., supra. No es correcta y no encuentra apoyo en el récord la expresión del Tribunal, a quo de que el "remedio de paga retroactiva fue el remedio que el árbitro encontró apropiado, en el balance de intereses, para que no empece a encontrar justificado el despido, eliminar el perjuicio causado por la violación al derecho del empleado a recibir por escrito las razones para ser despedido." (Apéndice de la Petición, pág. 211.) Ningún indicio surge de los autos que apoye la idea de que la ausencia de la notificación escrita le haya causado perjuicio al trabajador unionado en la presentación y defensa de su posición en los foros ante los que compareció.
Un examen del laudo tampoco refleja el llamado perjuicio a que se refiere el foro recurrido. En el laudo el árbitro no hizo referencia a perjuicio alguno. Aseveró que el pago retroactivo de salarios procedía porque al querellante se le había violado el debido proceso de ley y que la sanción era apropiada debido a que era similar a una que impuso un Oficial Examinador de la Puerto Rico Telephone Co. en un caso que posteriormente fue avalada por el Tribunal Supremo de Puerto Rico en el caso de Torres Solano v. P.R.T.C., 90 J.T.S. 122; opinión del 20 de noviembre de 1990. Al comparar lo resuelto en Torres Solano, supra, con la controversia ante nos resulta evidente que el árbitro se equivocó al así razonar. En el caso de Torres Solano, supra, la controversia giraba en tomo al despido de un empleado gerencial de la Puerto Rico Telephone Company que había agredido a otro, sin que se le celebrara la vista informal previa al despido. El examinador asignado para investigar la revisión administrativa instada por el empleado despedido en ese caso, concluyó que al empleado se le había violado su derecho a que se le celebrara una vista previa a su despido según lo resuelto en Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985). En la parte dispositiva de su decisión, el examinador le reconoció al empleado despedido el derecho a recobrar retroactivamente el salario que había dejado de percibir desde la fecha de la destitución hasta la fecha de su decisión. Revisada judicialmente dicha decisión, el Tribunal Superior revocó la decisión del Oficial Examinador y la sustituyó por una suspensión de sesenta (60) días, ordenando la restitución del empleado despedido con el pago retroactivo de los sueldos que dejó de devengar.
Este dictamen del Tribunal Superior fue impugnado ante el Tribunal Supremo por la Puerto Rico Telephone Company. En lo pertinente al asunto que nos ocupa el Tribunal Supremo concluyó que toda vez que al empleado despedido en ese caso se le había celebrado una vista formal en la que finalmente se determinó que su despido estaba justificado, procedía que al empleado despedido se le satisficieran los salarios dejados de devengar por él, desde el momento en que fue destituido dé, su puesto hasta que el Oficial Examinador rindió su decisión favoreciendo el despido. Basó su dictamen precisamente en que como el empleado público despedido tenía un derecho constitucional a que se le celebrara una vista informal previa a su despido, la violación de ese derecho lo privó, antes del despido, de la oportunidad de presentar su versión de lo sucedido, su justificación para agredir al compañero y cualquier otro atenuante que pudiese haber afectado la decisión en su caso.
Como se puede apreciar de lo anterior, Torres Solano, supra, no constituye un precedente adecuado o apropiado que avale la decisión del árbitro recurrida, pues ese caso es distingible del que es objeto de nuestro análisis. En primer término, es evidente que en el caso de Torres Solano, supra, el empleado despedido era un funcionario público a quién expresamente se le reconocía el derecho constitucional a que se celebrara una vista informal previa al despido. En segundo término, en Torres Solano supra, la violación al debido proceso de ley constitucional que se le imputa al patrono constituye una violación del derecho que se le reconoce al empleado público despedido a defenderse y presentar prueba a su favor en una vista cuyo fin es brindarle al empleado la oportunidad de convencer al patrono de lo errado o injustificado de su posible decisión de despedirlo, antes de que tal decisión se tome. En otras palabras, la violación al derecho constitucional de un empleado público a que se le *1310 celebre una vista informal previo a su despido de un puesto sobre el que posee un interés propietario perjudica al empleado público pues lo priva de su derecho a defenderse y ofrecer prueba a su favor antes de que lo despidan.
Evidentemente y por su efecto perjudicial, la violación al derecho de un empleado público a que se le celebre una vista informal previa al despido, no os similar a la violación del derecho de un empleado privado a que se le informe por escrito la razón de su despido, en circunstancias como las del pleito que nos ocupa. En el caso de marras es evidente que el unionado conocía como cuestión de realidad la razón de su despido. Ello le permitió recurrir al procedimiento de quejas y agravios pactado en el convenio colectivo para que se ventilase y considerase su posición. De igual forma y con similar propósito pudo recurrir ante el árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos. Nada surge de los autos del pleito que respalden la tesis de que debido a que el Condado Plaza no le notificó al unionado despedido la razón de su cesantía éste se vió perjudicado en el reclamo de su derecho a someter su querella a los procedimientos convenidos de quejas y agravios, primero, y de arbitraje, luego.
En tales circunstancias el que el Oficial Examinador en el caso de Torres Solano, supra, le impusiera al patrono la obligación de pagarle al cesanteado los sueldos dejados de devengar de forma retroactiva estaba justificada, pues no fue hasta la vista formal que se celebró que el empleado tuvo la oportunidad de presentar su versión de lo sucedido y los atenuantes que creía tener, no obstante haber quedado plenamente demostrado la razonabilidad del despido como sanción. Dentro de esa perspectiva, era lógico pensar y resolver que como al empleado no se le reconoció su derecho a la oportunidad de presentar su versión de los hechos que finalmente condujeron a su despido, no se le podía estimar cesanteado hasta que se corrigiera el error, tornando así la orden de pago de salarios retroactiva en la forma más justa de nivelar los intereses de las partes en esa etapa.
En el caso de marras, la violación por parte del Condado Plaza de su obligación de notificarle al empleado la razón del despido no implica que el unionado despedido desconocía la razón de su cesantía y que por tanto al emitirse el laudo impugnado fue que éste por primera vez conoció las razones para tal sanción para así concluir que desde ese momento debía considerarse como efectivo su despido. Tampoco obliga a que concluyamos, en ausencia de prueba al efecto en el récord, que el unionado se perjudicó por la omisión de la notificación formal de las razones que motivaron su despido. Menos aún justifica que se compense al unionado despedido mediante el pago de los salarios que dejó de recibir desde el momento en que fue despedido hasta la fecha en que se emitió el laudo. Esa lógica no tiene sentido jurídico en el caso ante nos como lo tuvo en el caso de Torres Solano, supra. Debido a ello, lo resuelto en este último no avala la decisión del árbitro que ratificó el Tribunal recurrido.
Finalmente, debemos recalcar que de los autos no surge razón alguna que impidiera que la unión recurrida planteara separadamente la violación del convenio y solicitara el remedio que estimara apropiado para penalizar tal violación en los foros adecuados y al tenor del convenio colectivo. Tampoco observamos motivo alguno que impidiera que la unión incluyera tal asunto en el acuerdo de sumisión, si realmente estimaba que tenía íntima relación con el despido.
V
Por los fundamentos antes expuestos, se expide el auto solicitado, se revoca parcialmente la sentencia recurrida para dejar sin efecto aquella parte de ésta que confirma el Laudo de Arbitraje emitido el 23 de marzo de 1994 por el árbitro Femando F. Fuentes, en el Caso Núm. A-2029-93, en lo referente a la concesión al unionado despedido de los salarios que dejó de recibir desde el día de su despido hasta la fecha del laudo.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General
*1311 ESCOLIOS 95 DTA 330
1. Copia de la notificación de la sentencia recurrida fue archivada en autos el'3 de noviembre de 1994. El Condado Plaza solicitó la reconsideración del dictamen la que acogida, fue denegada el 4 de abril de 1995. Copia de la notificación fue archivada en autos el 12 del mismo mes y año.
2. Artículo XV
Sección 5. Cuando un empleado sea despedido o suspendido, el patrono dará las razones por escrito dentro de los cinco (5) días después de tomar la acción.
3. Fairweather's, Practice and Procedure in Labor Arbitration, 3era. Ed., Washington D.C., BNA, 1990, pág. 10.
4. Elkouri & Elkouri, How Arbitration Works, 4ta. Fd., Washington D.C., BNA 1985, pág. 227. Véase Colón Molinary v. A.A.A., 103 D.P.R.. 143 (1974).
5. Fairweather's, supra, pág. 12.
6. Solicitud de Certiorari, Apéndice núm. 18, pág. 130.