684

COMUNIDAD AGRÍCOLA BIANCHI, peticionaria, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, ETC., demandada.

*Número:* JRT-64-7    *Resuelto:* 30 de junio de 1965

*Sifre & Ruiz-Suria* y *Baltasar Corrada del Río,* abogados de la peticionaria; *J. B. Fernández Badillo, Procurador General,*

*José Orlando Grau* y *Luis M. Rivera Pérez,* abogados de la demandada.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra y Dávila.

PER CURIAM: El 3 de abril de 1961 la Unión de Trabajadores Agrícolas del Barrio Palmar de Aguadilla, afiliada a la Federación Libre de los Trabajadores de Puerto Rico suscribió un convenio colectivo cubriendo a los trabajadores empleados por el Patrono peticionario-Comunidad Agrícola Bianchi, en virtud del cual el Patrono se obligó a satisfacer cinco centavos por cada tonelada de caña cortada y molida para un *Fondo de Asistencia Social* a ser *administrado* por la Unión *para beneficio de los trabajadores cubiertos por el convenio.* El Patrono se obligó también a pagar dos centavos por tonelada de caña cortada y molida a la Federación Libre, a la cual estaba afiliada la Unión contratante. Estos pagos se harían a la terminación de cada zafra. El Fondo de Asistencia Social sería *administrado* por un Comité especial de la Unión y sus administradores deberían prestar fianza. Este convenio se aprobó para tener una duración hasta el 31 de diciembre de 1963.

En virtud de Orden de la Junta de Relaciones del Trabajo de 25 de septiembre de 1962, se celebraron elecciones para que los obreros del Patrono eligieran sus representantes a los efectos de la contratación colectiva y demás propósitos, y celebradas elecciones el 9 de febrero de 1963, el Sindicato de Trabajadores *(Packinghouse AFL-CIO)* fue electo como tal representante, y así certificado por la Junta el 6 de marzo de 1963.

En 3 de junio de 1963 el Patrono representado por la Asociación de Productores de Azúcar suscribió un convenio colectivo con el Sindicato *(Packinghouse)* cubriendo sus empleados y se acordó crear un *Fondo de Beneficencia* y *Pensiones* al que el Patrono contribuye con 5½ centavos por

cada tonelada de caña cortada y molida. La Junta Directiva de la Unión administra el *Fondo* bajo reglamentación adoptada y rinde cuenta al Patrono de la inversión hecha de las cantidades de dinero con que éste contribuye al Fondo. Se creó también un Fondo de Seguro de Vida para proveer un seguro a los obreros del Patrono hasta donde las cantidades por él aportadas lo permitan según estudio de la Junta Directiva de la Unión, al cual el Patrono contribuye con 3 centavos por cada tonelada de caña cortada y molida. El Fondo de Seguro de Vida es *administrado* por la Unión bajo reglamentación adoptada, y debe informar al Patrono de su funcionamiento y uso con el fin de que su aportación se use para el mejor beneficio de los obreros. Tanto los 5½ centavos para el Fondo de Beneficencia como los 3 centavos para el de Seguro de Vida deben entregarse por el Patrono al Sindicato dentro de los 30 días siguientes a la terminación de la zafra. Fue acuerdo expreso el que las disposiciones del convenio de 3 de junio de 1963 entrarían en vigor a partir de esa fecha, y hasta el 31 de diciembre de 1965. "Pero a renglón seguido el contrato aclara que en cuanto a jornales, Fondo de Beneficencia y Pensiones y Clasificaciones tendrá efecto retroactivo al 1 de enero de 1963". [1]

El Patrono no depositó dentro de los 30 días de terminada la zafra de 1963 las cantidades ya dichas de 5½ y 3 centavos respectivamente del Fondo ni las del Seguro. Adujo para ello que la Federación Libre reclamaba esas aportaciones durante el período en que representó a los obreros del Patrono, hasta 6 de marzo de 1963, y que el Sindicato (*Packinghouse*) también las reclamaba durante toda la zafra, sin que el Patrono supiera con certeza a quién hacerlas efectivas. Que acudió entonces al depósito judicial o acción para que la Unión de Trabajadores Agrícolas (FLT) y el Sindicato (*Packinghouse*) se litigaran sus respectivas reclamaciones. El Patrono molió en la zafra de 1963, 122,321 tone-

---

[1] Cita directa del Oficial Examinador en sus Conclusiones e Informe.

ladas, que da la cantidad de $10,397.28 por concepto de los 5½ centavos del Fondo de Beneficencia y Pensiones y los 3 centavos del Seguro de Vida. Esa suma fue depositada en la acción judicial mencionada, caso Núm. 63-3378 de la Sala de San Juan del Tribunal Superior, demanda que se radicó el 26 de agosto de 1963.

En 1ro. de octubre de 1963 el Sindicato juró cargo contra el Patrono ante la Junta por práctica ilícita por no haber el Patrono pagado las referidas cantidades al Sindicato. Después de los trámites de rigor, en julio 1ro. de 1964 la Junta emitió una Decisión y Orden para que el Patrono cumpliera con lo dictaminado por el Oficial Examinador, y el Oficial dictaminó en lo pertinente que el Patrono debía remitir al Fondo de Pensiones y al Fondo de Seguro de Vida administrados por el Sindicato (AFL-CIO) los 5½ y 3 centavos respectivamente por tonelada de caña molida durante la zafra de 1963.

El Patrono ha impugnado ante este Tribunal la anterior Decisión y Orden. Varias son las cuestiones que se suscitan, entre ellas la de jurisdicción de la Junta y la del Tribunal Superior sobre la materia, así como el poder de la Junta para considerar una controversia de tipo propietaria, según se alega, entre dos Uniones.

■ Si el Patrono incumplió el convenio colectivo con el Sindicato está fuera de toda duda la jurisdicción exclusiva de la Junta de Relaciones del Trabajo para entender del asunto como una práctica ilícita, y esa jurisdicción no se le puede mermar ni suspender por el hecho de que se haya acudido a los tribunales en relación con la materia. Si ha asumido legalmente jurisdicción, la Junta la ejerce plenariamente, incluyendo las acciones afirmativas que deba decretar como consecuencia de sus dictámenes.

■ En lo que se refiere a la aportación para el Fondo de Beneficencia y Pensiones, nos parece claro que hubo una violación del Patrono de las disposiciones del convenio al no

entregar dichas aportaciones al Sindicato dentro de los 30 días de terminada la zafra. Descargaba el Patrono su obligación contractual entregando el dinero al Sindicato, no depositándolo judicialmente para que el Sindicato lo litigara con un tercero. Nos damos cuenta de la incertidumbre que abrigaba el Patrono, pero la Unión (FLT) no fue tercero contratante en el convenio con el Sindicato, caso en que al Patrono no le hubiera quedado otro remedio sino lo que hizo del depósito judicial por derivar ambos reclamantes en tal caso su derecho de una misma fuente, el convenio.

En cuanto a ese Fondo, debe ponerse en vigor la acción afirmativa de la Junta. Si se considera que ya bajo la representación de la Unión (FLT) o ya bajo la del Sindicato la parte beneficiaria del Fondo es la misma, y que una u otra Unión sólo tenían y tiene la *administración* del Fondo, no creemos que el Patrono venga a la larga obligado a pagar dos veces por lo mismo por no ser ese Fondo propiedad separada de uno u otro representante. Si la Unión (FLT) perdió ya su administración, y la tiene el Sindicato al momento de hacerse efectiva la Orden, es lógico y aceptable que sea el Sindicato quien reciba los fondos por la totalidad de la zafra o desde el 1ro. de enero de 1963. Ello obliga igualmente al Sindicato atender como administrador aquellas reclamaciones de los obreros contra el Fondo durante toda la zafra o desde el 1ro. de enero, aunque su representación la asumiera en marzo.

En lo que respecta a la aportación de 3 centavos para el Fondo de Seguro de Vida, no surge del récord que la obligación se impusiera al Patrono retroactivamente al 1ro. de enero de 1963. Véanse las conclusiones citadas del Oficial. En tal caso, la obligación del Patrono de aportar a este Fondo surgió a partir del 3 de junio y no a partir del 1ro. de enero. Lo dicho no prejuzga en forma alguna el derecho de la Federación Libre de los Trabajadores a exigir del Patrono los 2 centavos por tonelada de caña molida que el

Patrono se obligó a satisfacerle como propiedad de dicha Federación Libre bajo el convenio de 3 de abril de 1961 y mientras dicho convenio tuviera fuerza y vigor.

*Se modificará la Decisión y Orden de la Junta en el sentido expresado, para eliminar de la misma la obligación del Patrono de aportar al Sindicato para el Seguro de Vida por período anterior al 3 de junio de 1963, y así modificada se pondrá en vigor por este Tribunal.*