JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* SUCESIÓN J. SERRALLÉS, demandada.

*Número:* JRT-66-7 *Resuelto:* 24 de abril de 1967

---

(³) Cf. *Alcoa Steamship Co.* v. *Perez Rodriguez,* 376 F.2d 35 (1st Cir. 1967).

*J. F. Rodríguez Rivera, Procurador General Interino, Luis M. Rivera Pérez, Marta Ramírez de Vera y Celia Canales de González,* abogados de la peticionaria; *Orlando J. Antonsanti y Ernesto González Piñero,* abogados de la demandada.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La Junta de Relaciones del Trabajo de Puerto Rico, a nombre y en representación de Insular Labor's Association, pidió al Tribunal que pusiera en vigor un laudo de arbitraje. Expuso que en 3 de junio de 1963 la Unión y la demandada Sucn. J. Serrallés firmaron un convenio colectivo para regir sus relaciones desde el 24 de abril de 1963 al 24 de abril de 1966; que durante la vigencia de dicho convenio las partes sometieron a la consideración de un árbitro el siguiente acuerdo de sumisión:

"Determinar si el Patrono tiene poderes bajo los términos del convenio colectivo vigente a entregar, como entregó, la contribución que bajo la disposición del Artículo IX del convenio para el Plan de Bienestar, a la directiva del Capítulo Núm. 5 de la Insular Labor's Association, en vez de enviarla por correo a la dirección conocida de la Unión certificada por la Junta como la Unión contratante."

En 5 de mayo de 1966 el árbitro emitió un laudo resolviendo lo siguiente:

"El Patrono está en la obligación de hacer efectivo a la Unión certificada, Insular Labor's Association, sus obligaciones con-

traídas en el Artículo IX del convenio, Plan de Bienestar, y enviarla por correo certificado a la dirección conocida de ésta."

Informa la Junta en la representación que ostenta que a pesar de que la Unión ha requerido a la demandada el cumplimiento del anterior laudo, ésta "no le ha satisfecho a la Unión la contribución para el Plan de Bienestar que le adeuda según dispuesto en el dicho laudo", y suplica que lo pongamos en vigor y ordenemos a la Sucn. J. Serrallés que satisfaga el pago a la Insular Labor's Association de conformidad con el mismo.

Expedimos orden dirigida al Patrono para que expusiera las razones que tuviere para que no se pusiera en vigor el laudo, y éste ha comparecido oponiéndose por el fundamento de que el mismo es contrario a derecho e implica un enriquecimiento injusto.

En el convenio colectivo firmado el 3 de junio de 1963 comparecieron el Patrono Sucn. Serrallés e Insular Labor's Association como unión contratante. En su Art. IV se hizo constar que los siguientes empleados constituían, a la fecha de la firma del convenio, los empleados regulares y permanentes del patrono en la unidad apropiada cubierta por el mismo: Catalino Avilés, Genaro Almodóvar, Pedro Colón Figueroa, Bernardino Colón, Francisco Ortiz, Daniel Pabón, Juan Francisco Silva, Marcial Troche Plata, Domingo Vargas Santiago y Herminio Vázquez.

En el Art. VII se creó el Comité sobre Quejas, Reclamaciones y Discrepancias, y se hizo constar que tanto el fallo del Comité por voto mayoritario como el fallo de un árbitro serían conforme a derecho, y en cuanto a los hechos, finales e inapelables tanto para el obrero como la Unión y el patrono. Ni el Comité ni el árbitro tendrían autoridad para variar los términos del convenio y sí sólo para interpretarlo.

En el Art. IX bajo "Plan de Bienestar" se dispuso que el Patrono aportará $500 para dicho plan que tiene establecido la Unión para beneficio exclusivo de sus empleados, por año.

El convenio aparece firmado en representación de la Unión, por Genaro Almodóvar, Juan Francisco Silva y otra firma que parece decir Waldemiro Arroyo.

En el récord hay copia de una comunicación de 19 de febrero de 1963 en papel timbrado de Insular Labor's Association, dirigida a Serrallés y firmada por Waldemiro Arroyo, Presidente, informándole que tomara nota oficial de que los trabajadores del patrono de la unidad de construcción habían elegido de acuerdo con la ley, en asamblea previamente convocada, la siguiente directiva del *Capítulo Núm. 5 de esta Unión*, a la cual ellos están afiliados: Presidente, Juan Francisco Silva; Vicepresidente, Francisco Ortiz; Secretario-Tesorero, Catalino Avilés; "Marshal", Domingo Vargas y Vocal, Genaro Almodóvar. Informaba el Presidente de la Unión Sr. Arroyo que esta directiva representaba a sus otros compañeros en la unidad y como tales tendrían que entenderse con el patrono en cualesquiera quejas o asuntos que surgieran como consecuencia de sus empleos, y pedía la cooperación del patrono para estos compañeros.

Hay copia de otra comunicación en el récord fechada abril 19, 1965, dirigida a Serrallés en la que se dice que los abajo firmantes, obreros que componen la Unión de la Const. Campo, Insular Labor's Ass'n *Capítulo Núm. 5*, solicitan por medio de ésta que como en el año anterior, el pago de $500 le sea entregado al Tesorero que lo es el Sr. Catalino Avilés y éste a su vez lo depositará en banco para usarse en dietas por enfermedad, medicinas y servicios médicos. Firman esta carta manuscrita Juan Francisco Silva, Presidente; Herminio Vázquez, Bernardino Colón, Daniel Pabón, Francisco Ortiz, Genaro Almodóvar, Catalino Avilés, Tesorero, Pedro Colón Figueroa y Domingo Vargas, las mismas personas, excepto una, que aparecen en el convenio. Hay en el récord copia de un cheque fechado 29 de abril de 1964 expedido por Serrallés a "Tesorero de la Unión de Construcciones Campo, *Capítulo #5* de la Insular Labor's Association" por

la cantidad de $500 y copia de una comunicación de mayo 1, 1964 del Tesorero Catalino Avilés acusando recibo de dicho cheque según había sido solicitado por ellos a tenor del Art. IX del Convenio Colectivo. Hay copia de otro cheque fechado abril 30, 1965 por $500 de Serrallés y expedido en la misma forma que el anterior, y copia de la comunicación del Tesorero Avilés de 30 de abril de 1965 acusando recibo del mismo para el Plan de Bienestar.

◾ Admite la Junta en la representación que ostenta que el Convenio Colectivo dispone que tanto el Comité como el árbitro deberán resolver conforme a derecho y que cuando ésto ocurre los laudos pueden ser revisados judicialmente por errores de derecho, pero entiende la Junta que en la vista del arbitraje el patrono renunció a este pacto del convenio. Cf. *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, 69 D.P.R. 782 (1949); *Junta Rel. Trabajo* v. *Orange Crush of P.R.*, 80 D.P.R. 292 (1958); *Autoridad Sobre Hogares* v. *Tribl. Superior*, 82 D.P.R. 344, 356, 361 (1961); *Junta Rel. Trabajo* v. *Valencia Baxt*, 86 D.P.R. 282, 288 (1962); *J.R.T.* v. *Executive House, Inc.*, 91 D.P.R. 798 (1965).

Hemos examinado la transcripción de los procedimientos ante el árbitro y no podemos convenir con la Junta en que el patrono renunciara a nada en tal sentido. Surge del récord que el árbitro manifestó que existía la limitación de que el laudo debía ser conforme a derecho y él aceptaba dicha limitación con la advertencia de que no era abogado. Que las partes podían esperar que él fallara conforme a los principios básicos del derecho y no podían esperar que se rigiera por una ley que desconoce, y que con tal aclaración aceptaba el arbitraje. A esas manifestaciones el Sr. Arroyo en representación de la Unión hizo otras y renunció expresamente a dicha limitación del convenio. El representante del patrono en la vista no hizo manifestación alguna y a nada renunció,

asumiendo que hubiera estado investido de poderes delegados para renunciar condiciones pactadas en el convenio colectivo.

El récord es bastante impreciso en cuanto a ciertos hechos. No sabemos en detalle cómo surgió la controversia ante el Comité de Quejas, y en qué momento. El Convenio Colectivo no se elevó en los autos y fue preciso solicitarlo por nuestra Secretaría. El árbitro no hizo conclusión alguna de hecho. Dispuso su laudo con una referencia al caso de Autoridad Metropolitana de Autobuses, D-341. No toda la prueba documental admitida fue elevada.

De la transcripción taquigráfica de la vista ante el árbitro se deduce que a fines de 1965 pudo surgir discrepancia entre los directores del Capítulo objeto del convenio y el Sr. Waldemiro Arroyo. Según expuso el Sr. Arroyo, sin que en momento alguno declarara bajo juramento, para esta época él había sustituido a estos directores o alguno de ellos. Según expresó también el Sr. Arroyo, desde el 1963, principio del convenio, y hasta fines de 1965, esos directores representaban la unidad contratante. Explicó que bajo la Constitución de la Insular Labor's Association se crean *capítulos* en cada taller, fábrica, oficio o industria que la Unión organiza, y cada Capítulo está autorizado para elegir en elección separada y secreta, su propia directiva. Cada Capítulo puede adoptar su propio reglamento. Sostuvo que el Presidente de la Unión puede designar delegados y representantes, y haciendo uso de tal poder dejó cesante en noviembre de 1965 a las personas directoras del Capítulo 5.

Hay en el récord, transcrita, una carta de 16 de noviembre de 1965 dirigida por el Sr. Juan Francisco Silva a la Junta de Relaciones del Trabajo en donde pide una investigación y que después de la misma la Junta declare al Capítulo desligado de la Unión, y se le hacen ciertas imputaciones al Sr. Arroyo en relación con los fondos de los obreros y específicamente con el uso de la aportación del patrono para

el fondo de Bienestar bajo el Art. IX del convenio. Del récord no surge la acción tomada por la Junta respecto a lo anterior.

Éste no es un caso en que se trate de una controversia entre dos distintas Uniones, o en que ha habido un cambio de afiliación, o de certificación de la Unión contratante, o de representación a los efectos del cumplimiento de un convenio colectivo. No se puede imputar al patrono en este caso que se negara a entenderse con la Unión certificada, para entenderse con otra, como se le imputó ante el árbitro, o que no cumpliera con la Unión contratante. Es más bien un problema de personas dentro de la propia Unión.(¹) El convenio colectivo cubrió solamente al Capítulo 5 como unidad apropiada de contratación. (Art. IV en donde se mencionan todos los obreros que comprenden la Unidad; Carta del Presidente de 9 de febrero de 1963.) La aportación anual de $500 del patrono para el Plan de Bienestar se acordó en el Art. IX que era para beneficio *exclusivo* de los empleados del patrono que componían dicha unidad. Esa aportación no es para beneficio de todos los obreros o empleados en general que pertenezcan a la Unión.

Veamos a qué estado de derecho debe conducir la evidencia ante el árbitro, cuyo laudo debe ser conforme a ello.

La situación de hecho de este caso, hasta donde el récord nos permite determinar, no se asimila a la existente en el de *J.R.T.* v. *A.M.A.*, 91 D.P.R. 500 (1964); ni a la de *Com. Agrícola Bianchi* v. *J.R.T.*, 92 D.P.R. 684 (1965).

La Junta pide pongamos en vigor el laudo y ordenemos a la demandada Sucn. Serrallés que satisfaga el pago a Insular Labor's Association de conformidad con el mismo. El laudo dispone que el patrono "está en la obligación de hacer

---

(¹) Abrigamos cierta duda si bajo el Art. VII de Quejas y Reclamaciones, cae la situación de este caso. No es necesario detenernos en ello en vista de la decisión que adoptamos.

efectivo a la Unión certificada, Insular Labor's Association, *sus obligaciones* contraídas en el Artículo IX del Convenio, Plan de Bienestar, *y enviarlo* por correo certificado a la dirección conocida de ésta."

Presumimos que el laudo se refiere al pago de los $500 anuales. No surge con claridad si el mismo tiene efecto prospectivo (laudo es de 5 de mayo, 1966 y el convenio expiraba el 24 de abril, 1966), o si se emitió para obligar al patrono a pagar a la Unión otra vez las cantidades ya satisfechas a través del Capítulo. Si lo último, el laudo no sería conforme a derecho. El patrono hizo los pagos a quien estaba autorizado para recibirlos, según los hechos, y también se hizo a aquellos a cuyo favor se constituyó la obligación. Art. 1116, Código Civil, ed. 1930; Art. 1110, Art. 1118.

El Tribunal no pondrá en vigor el laudo en ese sentido. En lo que respecta a cualquier acción prospectiva, la prueba en el récord justifica que la Junta considere una vez más, a la luz de la querella de los obreros sobre el uso de tales fondos, si debe o no usar su discreción y poder para ayudar a poner en vigor el laudo en cuanto a este otro aspecto.

*Se desestimará la solicitud de la Junta peticionaria.*