JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* CENTRAL MERCEDITA, INC., PUERTO RICAN AMERICAN SUGAR REFINERY, INC., y SUCESIÓN J. SERRALLÉS, demandados.

*Número:* JRT-66-8    *Resuelto:* 12 de mayo de 1967

---

*J. F. Rodríguez Rivera, Procurador General Interino, Marta Ramírez de Vera, Celia Canales de González y Luis M. Rivera Pérez,* abogados de la peticionaria; *Jesús Hernández Sánchez,* abogado de la Insular Labor's Association; *Orlando J. Antonsanti y Ernesto González Piñero,* abogados de los demandados.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Entre las querelladas y la organización obrera Insular Labor's Association existieron convenios colectivos de trabajo (¹) que contenían idénticas cláusulas de arbitraje. (²)

---

(¹) Para cubrir la unidad denominada "Plant Clericals", Central Mercedita, Inc., y Puerto Rican and American Sugar Refinery, Inc., suscribieron un convenio con la Unión que rigió por término de tres años desde el 12 de julio de 1963; Sucesión J. Serrallés formalizó un convenio con la Unión para cubrir la unidad de empleados de construcción de las actividades de campo por idéntico término, pero desde el 24 de abril de 1963.

(²) "Art. VII

"*Comité Sobre Quejas, Reclamaciones y Discrepancias*

"1. Por la presente se crea un Comité sobre quejas, reclamaciones y discrepancias que estará integrado por los representantes de la Unión y dos representantes del Patrono. Este comité tendrá a su cargo la consideración y resolución de todas las quejas, reclamaciones y discrepancias que surjan como consecuencia del empleo de los trabajadores ya sean estos sobre salarios, despidos, castigos, clasificaciones de trabajo, condiciones de trabajo, y cualesquiera otras condiciones inherentes al empleo de los trabajadores y de la aplicación de los términos de este convenio. A los fines de expeditar los procedimientos, las partes acuerdan utilizar el siguiente trámite en la atención y solución de los casos que surjan:

"(a) El obrero de por si propio o por intermedio de algún delegado de la Unión, discutirá el asunto con el supervisor o capataz inmediato en

Con motivo de ciertas diferencias surgidas, las partes contratantes acordaron someter a un árbitro designado por el Secretario del Trabajo el siguiente acuerdo de sumisión:

"Determinar si el Comité de Quejas y Agravios que se creó en virtud de los convenios colectivos . . . pueden [*sic*] asumir jurisdicción para ventilar querellas de daños que

---

primera instancia no más tarde de las cuarenta y ocho (48) horas siguientes a la ocurrencia de la querella.

"(b) De no ser resuelta en forma alguna la discrepancia así sometida dentro del término de veinticuatro (24) horas después de sometida, entonces el obrero reclamante vendrá obligado a ir a las oficinas de la Unión a someter su discrepancia o queja.

"(c) El *Presidente de la Unión*, o su representante designado, inmediatamente someterá la querella del obrero por escrito al Patrono especificando en su escrito en qué consiste la queja, reclamación o querella, los pasos tomados por el obrero a tenor con lo dispuesto en el párrafo (a) de este artículo así como testigos.

"(d) Una vez el Patrono reciba el escrito de la Unión, contestará dicho alegato o querella dentro de los próximos tres (3) días laborables de la fecha de recibo del alegato de la Unión. La contestación del Patrono deberá indicar claramente sus alegaciones al respecto, testigos si algunos y cualquier otra prueba que el Patrono tenga para sostener su posición, si la misma fuera contraria al obrero.

"(e) En caso de que la posición del Patrono sea distinta a la de la Unión, inmediatamente se reunirá el Comité sobre Quejas, Reclamaciones y Discrepancias y entenderá oficialmente en la cuestión. El Patrono suministrará los servicios de un taquígrafo reporter al Comité. El taquígrafo transcribirá las notas de las audiencias diarias y entregará una copia a la Unión y otra copia al Patrono reteniendo el taquígrafo el original de dichas notas.

"(f) La reunión del Comité para entender en la querella o reclamación del obrero deberá celebrarse no más tarde de los tres (3) días laborables siguientes a la fecha de la contestación del Patrono a la querella.

"(g) Una vez escuchada toda la prueba y transcritas todas las notas, el Comité se reunirá en sesión para emitir su fallo de acuerdo con la prueba y mejor criterio del Comité. El fallo del Comité deberá ser de tres votos contra uno.

"(h) En caso de que el Comité no llegare a un acuerdo, el asunto con todas sus notas pruebas pasará a la consideración de un árbitro que será designado por el Hon. Secretario del Trabajo de Puerto Rico. El árbitro tendrá discreción para resolver la disputa por la prueba sometida y entendida por el Comité o podrá reabrir la vista y solicitar pruebas adicionales o motu proprio o a solicitud de cualquiera de las partes.

"(i) En cualquier caso, el fallo del árbitro no deberá tardar más

insta la Unión a tenor con los artículos que crea el Comité aplicable."

De los escasos elementos que contiene el expediente inferimos que la Unión reclama daños y perjuicios por alegadas violaciones del convenio cometidas por el Patrono.(³)

En la vista celebrada ante el árbitro la posición adoptada por el abogado de las empresas fue, en síntesis, que (a) la reclamación de la Unión no nacía de la interpretación o aplicación de ninguna cláusula del convenio y que lo procedente era una acción en daños y perjuicios para lo cual el foro apropiado eran los tribunales, y no el comité; y, (b) que del texto de la cláusula del convenio que establece el comité de quejas y agravios se deduce que los únicos asuntos que este organismo puede considerar son los que surjan de las relaciones de las empresas con trabajadores individuales, mas no con la Unión, cuya única misión era representar los obreros en los casos en que éstos estuviesen interesados o fueren partes. Por su parte la Unión insistió en que la cláusula proveyendo el arbitraje era lo suficientemente amplia para conferir al

---

de treinta (30) días a partir de la fecha en que le haya sido sometida la cuestión.

"(j) Tanto el fallo del Comité por voto mayoritario como el fallo del árbitro *será conforme a derecho y en cuanto a los hechos, final e inapelable* tanto como para el obrero como para la Unión y el Patrono.

"(k) En caso de que el fallo del Comité o del árbitro fuere favorable al obrero reclamante, el Patrono vendrá obligado a compensarle al obrero todos aquellos salarios que el obrero haya dejado de percibir siempre que éste haya cumplido con todos los trámites anteriormente señalados. El Patrono además cualesquiera otra recomendación que emita el Comité o el árbitro. Tanto el Comité como el árbitro no tendrán autoridad para variar los términos de este convenio y sí sólo para interpretarlo." (Énfasis nuestro.)

(³) Según se desprende de ciertas manifestaciones hechas por el señor Waldemiro Arroyo, representante de la Unión, en una audiencia celebrada el 19 de enero de 1965 ante el árbitro, estas alegadas violaciones dieron margen a la presentación de un cargo de práctica ilícita contra el patrono por la negativa a arbitrar que fue desestimado por el Presidente de la Junta de Relaciones del Trabajo, "cuando el señor Pedro G. Goyco, Director de Relaciones Obreras de los patronos, cambió de posición e hizo saber que estaba dispuesto a someter al Comité la cuestión jurisdiccional".

Comité de Quejas, Reclamaciones y Discrepancias la facultad de entender en la controversia surgida, tanto en cuanto se refiere a la materia como a la identidad de la organización obrera como querellante *pro se.*

El árbitro, luego de considerar las alegaciones de las partes, emitió un laudo que en su parte pertinente lee como sigue:

"La decisión a emitirse en este caso es necesario conformarla con la doctrina establecida por el Tribunal Supremo de Estados Unidos en los casos Steelworkers vs. Enterprise Wheel and Car Corp., 363 U.S. 593 (1960), 46 LRRM, 2423; Steelworkers vs. American Manufacturing Company, 363 U.S. 564, 46 LRRM, 2414; Steelworkers vs. Warrior and Gulf Navigation Company, 363 U.S. 574; 46 LRRM, 2416 y Ceferino Pérez vs. Autoridad de Fuentes Fluviales de Puerto Rico, resuelto por el Tribunal Supremo de Puerto Rico, el 25 de enero de 1963.

"En estos casos se determinó que es arbitrable todo aquello que no esté específicamente excluido en el acuerdo o cláusula de arbitraje de un convenio colectivo y que en caso de duda sobre la arbitrabilidad o no arbitrabilidad se decide a favor de la arbitrabilidad.

"De una somera lectura al Artículo VII del convenio colectivo que establece el Comité de Quejas, Reclamaciones y Discrepancias, se desprende el ámbito de su jurisdicción. Es tan amplia dicha jurisdicción que se puede afirmar que incluye toda queja, reclamación y discrepancia que surja como consecuencia de la condición de trabajo sujetas a la negociación colectiva. En ausencia de una disposición expresa de exclusión o de limitación jurisdiccional y conforme con la doctrina establecida en los casos anteriormente citados, entendemos que las reclamaciones de daños alegadamente ocasionados por violaciones de las obligaciones contractuales son arbitrables."

A tenor con el laudo emitido la Unión requirió a las empresas para que se efectuara la reunión correspondiente del Comité para entender en los méritos de la reclamación de daños por violación al convenio que la organización obrera for-

mulaba. Ante la negativa patronal, la Junta nos pide que pongamos en vigor el laudo. (⁴)

1. (a) Las querelladas sostienen que el árbitro se excedió en su jurisdicción. Se fundan en un análisis de la cláusula de arbitraje y la naturaleza de las reclamaciones formuladas por la Unión. Sin embargo, en esta etapa de los procedimientos, no es determinante ni puede discutirse nuevamente la interpretación del Art. VII del convenio, a menos que el laudo fuere contrario a derecho, ya que precisamente lo que se sometió a la consideración del árbitro en el acuerdo de sumisión fue la determinación sobre el carácter arbitrable de las reclamaciones por violación de los convenios. *J.R.T.* v. *Caribbean Container Co.*, 89 D.P.R. 710 (1963) ; Fleming, *Reflections on the Nature of Labor Arbitration*, 61 Mich. L. Rev. 1245 (1963) ; Nota, *Arbitration: Scope of the Arbitrable Dispute: Dispute Arbitrable Even Though Prima Facie Without Merit*, 9 U.C.L.A. L. Rev. 218 (1962) ; véanse además, *López* v. *Destilería Serrallés*, 90 D.P.R. 245 (1964) ; *J.R.T.* v. *Caribbean Container Co.*, 89 D.P.R. 742 (1964) ; *J.R.T.* v. *Sindicato Obreros Unidos*, 92 D.P.R. 60 (1965).

(b) Si bien como regla general un laudo puede ser impugnado o anulado si existe algún defecto o insuficiencia en la sumisión, *Junta Rel Trabajo* v. *Valencia Baxt*, 86 D.P.R. 282 (1962) y casos allí citados, tal norma no es aplicable al presente caso. La posición de que los representantes del patrono se excedieron en su autoridad por haber sometido a arbitraje una controversia que bajo los términos del convenio no lo era, es una reiteración del punto que discutimos anteriormente. Es correcto que el comité y sus miembros carecen de autoridad para "variar" los términos del convenio, pero la tienen expresa para "interpretarlo". Una de

---

(⁴) Las querelladas acudieron al Tribunal Superior, Sala de San Juan, en impugnación del laudo. A petición de la Junta paralizamos los procedimientos en protección de nuestra jurisdicción.

las funciones de los comités de arbitraje es precisamente determinar sobre la arbitrabilidad de una controversia. Irreconocerle tal facultad equivaldría a, según dijimos en *J.R.T.* v. *Caribbean Container Co.*, 89 D.P.R. 710, "conceder un poder de veto absoluto a cualquiera de las partes que podría con simplemente adoptar la posición de que una disputa no es arbitrable, frustrar el propósito de este mecanismo dirigido a dirimir las diferencias que surjan mediante un procedimiento rápido y sencillo". Las querelladas bien pudieron conservar la alegación en que ahora descansan oponiéndola como defensa en el cargo de práctica ilícita por violación de convenio consistente en la negativa a someter la controversia a arbitraje que la Unión ya había formulado. Tal vez impelidas por una mejor política de conservar y restablecer la armonía en sus relaciones obrero-patronales decidieron acceder a la demanda de arbitraje de la Unión. Véase, *J.R.T.* v. *Sucn. J. Serrallés*, 94 D.P.R. 343 (1967). Ahora, cuando el resultado ha sido adverso, no pueden volver sobre sus pasos.

2. La alegación básica del escrito de oposición a que accedamos a la petición de la Junta para poner en vigor el laudo es que es contrario a derecho porque compete a los tribunales, y no al árbitro, determinar si una controversia es o no arbitrable. *Atkinson* v. *Sinclair Refining Co.*, 370 U.S. 238 (1962) y su complementario *Drake Bakeries* v. *Bakery Workers*, 370 U.S. 254 (1962), citando los llamados *Steelworkers cases*, (5) no conducen al resultado ansiado por las querelladas. Limítanse a resolver que cuando en una acción de daños por violación del convenio bajo la Sec. 301 de la Ley Taft-Hartley, 29 U.S.C. 185, se interpone como defensa que la controversia es arbitrable bajo los términos del contrato entre las partes, corresponde a los tribunales determinar si

---

(5) *Steelworkers* v. *American Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers* v. *Warrior and Gulf Co.*, 363 U.S. 574 (1960); *Steelworkers* v. *Enterprise*, 363 U.S. 593 (1960).

en efecto la cuestión debe someterse previamente al comité establecido para tales efectos. (⁶) Pero significativamente se dice, a la pág. 241 en *Atkinson*, que "El arbitraje es una materia contractual y no puede requerirse a una parte que someta una disputa a arbitraje cuando así no lo ha convenido". Pero es que como hemos visto el acuerdo de sumisión es claro en cuanto a que la cuestión sometida *voluntariamente* era la relativa a la naturaleza arbitrable de la controversia. (⁷)

No debe olvidarse a este respecto que, contrario a nuestra legislación, el Congreso federal decidió que el cumplimiento de los convenios se dejaría a los tribunales. En Puerto Rico, además de ese mecanismo para dilucidar sobre el quebrantamiento, incorporamos otros que le dan competencia a la Junta, bien a través de su intervención cuando el incumplimiento se imputa como una práctica ilícita, o, cuando, como en el presente caso, puede invocar su facultad para solicitar que se ponga en vigor un laudo de arbitraje relacionado con violaciones contractuales. Véase, Wollet, *The Agreement and the National Labor Relations Act: Courts, Arbitrators and the NLRB—Who Decides What*, 14 Lab. L.J. 1041 (1963). Cf. *P.R. Telephone* v. *Junta Rel. Trabajo*, 86 D.P.R. 382, 394–396 (1962).

■ Bajo los hechos que consideramos al someter la controversia sobre jurisdicción al procedimiento de arbitraje reglamentado en el convenio, las partes seleccionaron al árbitro como foro para dilucidar la controversia y renunciaron a liti-

---

(⁶) Estudiosos del problema trazan aún ciertas diferencias dependiendo de si la controversia es una de arbitraje sustantivo o simplemente procesal, esto es, si se ha seguido el procedimiento prescrito en el convenio. Dunau, *Procedure Arbitrability—A Question for Court or Arbitrators*, 14 Lab. L.J. 1010 (1963).

(⁷) Debe también tenerse en mente que la doctrina se ha ido elaborando principalmente al margen de situaciones en que la empresa ha demandado judicialmente a la Unión por los daños ocasionados al violarse una cláusula de "no huelga". Schubert, *Arbitration and Damage Claims for Violation of the No-Strike Clause*, 16 Lab. L.J. 751 (1965).

gar ante los tribunales la cuestión propiamente sometida. *Rivera Adorno* v. *Autoridad de Tierras*, 83 D.P.R. 258 (1961).

*Se dictará la orden correspondiente para que se ponga en vigor el laudo de arbitraje emitido en 5 de mayo de 1966 en el caso A-15-1, implementado en la forma solicitada por la Junta.*