# 2007 DTA 127

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

DEPARTAMENTO DE AGRICULTURA
Recurrente

v.

UAW-UNIÓN DE EMPLEADOS DEL DEPARTAMENTO DE AGRICULTURA
Recurrida

Núm. KLCE-2007-00301

San Juan, Puerto Rico, a 9 de noviembre de 2007

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz
y los Jueces Ramírez Nazario y Piñero González

Ramírez Nazario, Juez Ponente

Comparece el Departamento de Agricultura por medio del Procurador General para solicitar la revocación de la Sentencia emitida el 25 de enero de 2007, notificada el 1 de febrero de igual año por el Tribunal de Primera Instancia, Sala de San Juan, (TPI). Mediante la referida Sentencia, el TPI denegó la petición de revisión del Laudo de Arbitraje emitido el 19 de abril de 2006 por la Comisión de Relaciones del Trabajo del Servicio Público.

Considerados los escritos de las partes, así como los documentos que los acompañan, a la luz del derecho aplicable, resolvemos expedir el auto solicitado y revocar la Sentencia recurrida.

## I

Según surge de autos, el señor Luis Saavedra Caraballo (señor Saavedra) se desempeña como Inspector de Mercados en el Departamento de Agricultura. En los años 2003 y 2004, éste recibió aumentos de $150 mensuales en virtud del Convenio Colectivo firmado entre el Departamento de Agricultura y la UAW-Unión de Empleados del Departamento de Agricultura (Unión), a la que pertenece el señor Saavedra. El 4 de agosto de 2004, el señor Saavedra solicitó un aumento de sueldo por años de servicio, conocido como quinquenio, ante la señora Alma Hernández Sierra, Directora de la Oficina de Recursos Humanos del Departamento de Agricultura. Su petición fue denegada.

En vista de la denegación de su reclamo, la Unión, en representación del señor Saavedra, presentó una querella (AQ-04-614) ante la Comisión de Relaciones del Trabajo del Servicio Público (Comisión). Alegó el señor Saavedra que en virtud del Convenio Colectivo vigente y la Ley Núm. 89 de 12 de julio de 1979, tiene derecho al pago de un aumento por años de servicio. El 12 de noviembre de 2004, la Unión solicitó arbitraje ante la División de Conciliación y Arbitraje de la Comisión.

La vista de arbitraje se efectuó el 14 de marzo de 2005. Comparecieron el licenciado Norman Pietri, representante legal de la Unión y el señor Saavedra. En representación del Departamento de Agricultura compareció el señor Iván Lockword y la señora Alma Hernández, Directora de Recursos Humanos. Así, las partes sometieron sus respectivos alegatos. El acuerdo de sumisión ante el arbitro fue: *"Si el empleado qte. [sic] tiene o no derecho al pago del quinquenio que reclama. Que se determine el remedio apropiado."*.

Así las cosas, el 19 de abril de 2006, la Árbitro Janeth De Jesús Arévalo emitió el Laudo mediante el cual acogió la postura de la Unión. Así concluyó que el señor Saavedra tenía derecho al aumento de sueldo por años de servicios aun cuando había recibido los aumentos antes mencionados, contemplados en el Convenio Colectivo. Interpretó la Árbitro que dichos aumentos debían ser catalogados como concedidos por disposición de la Ley Núm. 45 de 25 de febrero de 1998, y por tanto no interrumpieron el término de cinco años para recibir aumento por años de servicio.

Insatisfecho, el Departamento de Agricultura impugnó el Laudo ante el TPI mediante la presentación de un Escrito de Revisión. El TPI denegó la petición de revisión. Basó su determinación en la deferencia debida a los laudos de arbitraje por los tribunales. Así indicó que coincidía con lo resuelto en el Laudo en cuestión.

## II

Inconforme, el Departamento de Agricultura acude ante nos representado por el Procurador General y señala como errores:

*"Primer Error: Erró el Honorable Tribunal de Primera Instancia al confirmar el Laudo impugnado, ya que éste no fue emitido conforme a derecho.*

*Segundo Error: Erró el Honorable Tribunal de Primera Instancia al sostener que los aumentos de sueldo*

*otorgados por virtud del Convenio Colectivo, deben ser catalogados como aumentos concedidos por disposición de ley, al amparo de la Ley 45, y en consecuencia establecer que los mismos no interrumpen el término de cinco (5) años establecidos en la Ley Núm. 89 de 12 de julio de 1979."*

## III

La doctrina vigente sobre la revisión judicial de los laudos de arbitraje gira en torno a la política judicial de autorestricción y de deferencia al procedimiento de arbitraje. Por lo que el Tribunal Supremo ha sostenido que los tribunales revisores no deben inclinarse fácilmente a decretar la nulidad de los laudos. Ahora bien, dicha postura pierde su rigidez cuando el laudo tiene que ajustarse al derecho aplicable. Así lo ha reconocido el Tribunal Supremo de Puerto Rico al expresar en *JRT v. Corp. Crédito Agrícola*, 124 D.P.R. 846, 849 (1989), que *"un laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho".* Añade el caso: *"En ausencia de disposición expresa a esos efectos, un laudo sólo puede ser impugnado si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública." Id.*

Por tanto, la norma general de que los laudos merecen un alto grado de deferencia por parte de los tribunales y que los mismos son finales, obligatorios e inapelables, **cede ante un acuerdo de que el mismo sea conforme a derecho**. En *J.R.T. v. New York & Porto Rico Steamship*, 69 D.P.R. 782 (1949), el Tribunal estableció que cuando las partes así lo disponen, los árbitros deben seguir las reglas de derecho, y rendir sus laudos al tenor de las doctrinas legales prevalecientes. Por tanto, la función que ejerce el árbitro es análoga a la ejercida por los tribunales, lo que faculta al foro apelativo a revisar las controversias que allí se susciten.

Cónsono con lo anterior, la regla general de que los árbitros no están obligados a aplicar la doctrina del precedente ni los principios de derecho sustantivo, queda desplazada si se exige que el laudo sea conforme a derecho. En *Hotel Condado Plaza v. Asoc. de Empleados del Casino*, **99 J.T.S. 153**, 149 D.P.R. 347 (1999), se indicó que al interpretar un convenio, el árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de los Estados Unidos y de Puerto Rico en el campo de derecho laboral, y que se reputarán persuasivas las decisiones de los tribunales de primera instancia y de agencias administrativas, y los laudos y escritos de reputados árbitros.

Por otro lado, en *JRT v. Central Mercedita*, 94 D.P.R. 502 (1967), se resolvió que cuando las partes de un convenio colectivo se acogen al procedimiento de arbitraje, no pueden volverse sobre sus pasos y repudiar el mismo por el mero hecho de que el fallo dictado le sea adverso. Dicho principio se fundamenta en la opinión emitida por el Tribunal Supremo de Puerto Rico en *U.I.L. de Ponce v. Destilería Serralles*, 116 D.P.R. 348 (1985), citando a *Pérez v. Autoridad de Fuentes Fluviales*, 87 D.P.R. 118 (1963), en la que reiteró la importancia de los convenios colectivos en el campo de derecho laboral, al expresar que *"...el convenio colectivo es un mecanismo que en adición a ser un contrato que, como tal, tiene fuerza de ley entre las partes suscribientes siempre que no contravenga las leyes, la moral y el orden público, promueve la paz y la estabilidad en el campo obrero-patronal. Su validez y eficacia, en consecuencia, debe ser siempre objeto del más entusiasta endoso por parte de los tribunales."*

En síntesis, la intervención judicial en la revisión de los laudos de arbitraje se justifica cuando las partes sometan el asunto al árbitro para que sea resuelto conforme a derecho. Esta es la excepción a la política judicial de autorestricción para la revisión de laudos de arbitraje. **Este pacto deberá surgir del convenio colectivo** o del acuerdo de sumisión. Ello implica que ambas partes pueden recurrir ante el foro judicial para impugnarlo y revisar su corrección y validez jurídica. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62 (1987). Hasta entonces, **el tribunal quedará facultado para revocar un laudo si el árbitro erró en la aplicación del derecho.** *UIL de Ponce v. Destilería Serallés, Inc.*, 116 D.P.R. 348 (1985). (Énfasis nuestro).

De acuerdo a este esquema, la función del tribunal no es la de emitir un juicio *de novo* sobre los méritos de la controversia, sino la de pasar juicio sobre la corrección de lo decidido por el árbitro, confiriendo al laudo una presunción de corrección similar a la que se le atribuye a cualquier sentencia o resolución administrativa. *U. Ind. Emp. A.E.P. v. Autoridad de Edificios Públicos*, 146 D.P.R. 611 (1998).

Por otro lado, conocido es que un tribunal no está autorizado a añadir a un estatuto restricciones o limitaciones que no aparecen en el texto de una ley cuando los términos de un estatuto son claros, y susceptibles de una interpretación inequívoca según el significado común y corriente de sus palabras y su construcción gramatical. Los tribunales no deben intercalar palabras ni suplir omisiones al interpretarlo. *Irizarry v. J J Cons. Prods. Co., Inc*, 150 D.P.R. 155, 163-164 (2000).

Nuestro deber, dentro de la forma republicana del gobierno, se circunscribe a interpretar la ley y despejar las lagunas que existan en la misma, utilizando como guía la intención del legislador. Es norma establecida que la letra clara de la ley es la mejor expresión del espíritu de la misma. A esos efectos, el Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14, dispone que: *"cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu"*. Este precepto estatutario reconoce que la ley está sujeta a ser interpretada, pero limita la interpretación cuando el texto de la misma es claro. El espíritu de la ley, reflejado en la intención legislativa, es la mejor herramienta para encontrar el verdadero sentido de una ley. En *Meléndez v. Tribunal*, 90 D.P.R. 656, 662 (1964), se establece:

*"La regla de estricta hermenéutica legal no exige ni puede justificar que se elimine mediante legislación judicial cualquier parte de una ley, no importa cuál pueda ser la opinión del tribunal respecto a la conveniencia de la misma. Creemos justificado añadir que cuando los términos de un estatuto son claros y susceptibles de una interpretación inequívoca según el significado común y corriente de sus palabras y su construcción gramatical, bajo la misma regla tampoco debemos intercalar palabras ni suplir omisiones al interpretarlo."*

En lo pertinente al caso de autos, acudimos a varias leyes laborales en virtud del principio de hermenéutica *in pari materia*, norma de interpretación estatutaria que dispone que las leyes sobre un mismo asunto deben interpretarse refiriéndose unas a las otras - Art. 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18 - de suerte que podamos lograr mejor enlace y cohesión. *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 749 (1992).

Por un lado, la Ley Núm. 45 del 25 de febrero de 1998, según enmendada, 3 L.P.R.A. § 1451 y ss., conocida como *"Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico"*, fue aprobada con el propósito de conferirle a los empleados públicos del Gobierno Central del Estado Libre Asociado que no estaban cubiertos por la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. § 61 y ss., el derecho a la organización sindical y a la negociación colectiva, sujeto a las condiciones por ellas establecidas. *Asoc. de Maestros de P.R. v. Comisión de Relaciones del Trabajo del Servicio Público de P.R.*, 2003 J.T.S. 50, 159 D.P.R. 81 (2003).

En lo pertinente al caso de autos además, la Ley 89, de Retribución Uniforme, *supra*, dispone:

*"A partir del primero de julio de 1979, aquellos empleados en el servicio de carrera con status regular o probatorio en agencias de la Administración Central y en agencias consideradas administradores individuales* ***que no hayan recibido ninguna clase de aumentos de sueldo excepto los otorgados por disposiciones de ley durante un período de cinco (5) años de servicios,*** *recibirán un aumento de sueldo equivalente a un tipo o paso de la escala correspondiente. ...Cualquier autoridad nominadora podrá denegar el aludido aumento de sueldo a cualquier empleado si a su juicio los servicios del empleado durante el período de cinco (5) años correspondientes no hubiesen sido satisfactorios. En este caso, la autoridad nominadora habrá de informarle por escrito al empleado las razones por las cuales no se le concede el referido aumento y, además, su derecho de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal."* (Énfasis nuestro).

La sec. 4.8(10) del Reglamento de Retribución Uniforme, Núm. 3109 de 7 de junio de 1984, recoge lo señalado anteriormente, disponiendo lo siguiente:

*"Serán elegibles para recibir aumentos de sueldo por años de servicios, aquellos empleados que ocupen puestos en clases comprendidas en los planes de clasificación para el servicio de carrera y **que no hayan recibido ningún tipo de aumento de sueldo, excepto los otorgados por disposiciones de ley, durante un período de cinco años de servicios satisfactorios e ininterrumpidos.** Se exceptúan de esta disposición, los empleados con nombramiento transitorio. "* (Énfasis nuestro).

## IV

Discutiremos en conjunto los errores señalados, ya que están estrechamente vinculados. La relación entre la Unión y el Departamento de Agricultura se regía al momento de los hechos de este caso por el Convenio Colectivo vigente del 1 de octubre de 2002 al 30 de septiembre de 2005. La Unión y el Departamento de Agricultura pactaron y consignaron en el texto del Convenio Colectivo aludido que el laudo que rindiera el Árbitro, como fruto de un procedimiento de arbitraje, sería conforme a derecho. (Sección 19, artículo XVIII del Convenio Colectivo). Así entonces, como cuestión de umbral, queda establecido y no está en controversia que el Laudo que nos ocupa tenía que ser emitido conforme a derecho. Siendo así, se justifica la intervención judicial si el mismo no corresponde al derecho aplicable. No obstante, debemos señalar que en este caso procedería además la revisión judicial del Laudo, por resultar éste contrario a la política pública que se pretende formular por medio de las leyes laborales implicadas.

Primeramente, hallamos que el Laudo en cuestión no es conforme a derecho, toda vez que el árbitro obvió lo establecido tanto en la Ley 89, *supra,* como en el Reglamento sobre la Ley de Retribución Uniforme, respecto a las instancias en que el período para recibir el aumento por años de servicios se considera interrumpido. Como vimos, dicho aumento está concebido para empleados que no hubiesen recibido ninguna clase aumento de sueldo durante los cinco años establecidos, que no fueren los aumentos recibidos por disposición de ley.

En el caso de autos, el señor Saavedra recibió dos aumentos de $150 mensuales en los años 2003 y 2004 en virtud del Convenio Colectivo negociado entre la Unión y el Departamento de Agricultura. El Convenio Colectivo referido disponía en su Artículo 28 sobre este particular:

*"... durante la vigencia del Convenio Colectivo, el Departamento y la Corporación concederán los aumentos de salarios mensuales que se indican a continuación a los empleados cubiertos por este Convenio Colectivo, sujeto a la aprobación de la asignación presupuestaria de la Rama Legislativa, **o los que otorguen por ley** u orden ejecutiva a los empleados públicos, lo que sea mayor: $100.00 mensuales que fueron efectivos el primero de julio año fiscal 2002-2003, y cuyo aumento ya fue otorgado en dicha fecha de efectividad; $150.00 mensuales a ser efectivos el primero de julio año fiscal 2003-2004; $150.00 mensuales a ser efectivos el primero de julio año fiscal 2004-2005. ".* (Énfasis nuestro).

El señor Saavedra contiende que tales aumentos deben considerarse como otorgados por disposición de ley, tal como lo determinó la Árbitro. Basa su contención principalmente en que el Convenio Colectivo que provee para tales aumentos tiene su génesis en la Ley 45, *supra,* y por tanto, los aumentos concedidos en virtud del mismo deben considerarse otorgados por disposición de dicha ley. Como tales, no impiden que se conceda el aumento por años de servicio o quinquenio. No nos convence.

Por un lado, de una lectura del Artículo 28 del Convenio Colectivo que prescribe los consabidos aumentos, observamos que en éste se distingue entre los obtenidos por negociación (recogidos en el propio convenio), y *"los que otorguen por ley"*. Es decir, en el propio Convenio Colectivo se reconoce que se trata de aumentos a considerarse como distintos.

Por otro lado, el Convenio Colectivo entre el Departamento de Agricultura y la Unión (conforme al cual el señor Saavedra recibió aumentos de sueldo para los años 2003 y 2004), tiene su génesis en la facultad que la Ley 45, *supra*, le otorgó a los empleados públicos para sindicarse y negociar múltiples materias. Los aumentos salariales fueron parte del resultado de la negociación colectiva de la Unión y el Departamento de Agricultura, conforme al invocado estatuto de ley que le da derecho a ello. Es decir, la Ley 45, *supra*, le da a los empleados públicos el derecho a la negociación colectiva, no a un aumento salarial específico. Así surge de la exposición de motivos de la misma y de su propio texto: *"Los empleados disfrutarán **del derecho a negociar** con la agencia un convenio colectivo, a través de su representante exclusivo, en el que se discutan y acuerden disposiciones sobre salarios, beneficios marginales, términos y condiciones de empleo."* 3 L.P.R.A. sec. 1451. (Énfasis nuestro). La letra clara de la Ley 45, *supra*, es la mejor expresión del espíritu de la misma. Consecuentemente, los aumentos recibidos por el señor Saavedra no fueron ordenados u otorgados directamente por la Ley 45, *supra*. Los mismos fueron otorgados por virtud del Convenio Colectivo, que a su vez fue producto de la negociación entre las partes.

Como dijimos, la Ley 89, *supra*, dispone palmariamente quiénes, y cuándo, tienen derecho a aumentos de sueldo por años de servicios. Del texto de la ley resulta claro que serán acreedores a dicho aumento aquellos empleados que no hayan recibido ninguna clase de aumento de sueldo durante un período de 5 años, excepto los otorgados por disposiciones de ley. Los aumentos por disposición de ley a los cuales se refiere la Ley 89, *supra*, son los que surgen como resultado de la aprobación por parte de la legislatura de una medida que provee específicamente para tal aumento o aumentos. Medida que puede ser de iniciativa propia de la legislatura o del ejecutivo y que se convierte en ley con la firma del gobernador de turno.

Eso así, el aumento que recibe el empleado público unionado como resultado de la negociación entre la unión y la agencia pública (que luego pasa a ser parte del Convenio Colectivo), no constituye el aumento por disposición de ley exceptuado por el artículo 7 de la Ley 89, *supra*. Por tal razón, el señor Saavedra no tiene derecho al aumento salarial solicitado por años de servicio, ya que los cinco años que establece la Ley 89, *supra*, fueron interrumpidos por los aumentos que se le concedieron en los años 2003 y 2004, producto de la negociación colectiva.

A esta misma conclusión arribó la Oficina Central de Asesoramiento Laboral de Recursos Humanos del Estado Libre Asociado (OCALARH). ■ La entonces Administradora de OCALARH emitió una opinión en la que expresó que *"...el aumento que por virtud de la negociación colectiva se le concedió y concederá a los empleados de la Unidad Apropiada de su Agencia tiene el efecto de interrumpir el período de cinco años, ya que éste no fue obtenido mediante legislación, sino por negociación."*. (Apéndice del Procurador General, pág. 55). Esta opinión, emitida por la Administradora de la agencia con el *expertise* en la materia, apoya nuestra determinación.

En fin, el Laudo que nos ocupa resulta contrario a derecho y a la política pública de salud fiscal. La Sentencia del TPI, al denegar su impugnación, sostiene una interpretación errónea en derecho. Por consiguiente, se cometieron los errores señalados.

## V

Por los fundamentos expresados, se expide el auto solicitado y se revoca la Sentencia recurrida. Consecuentemente, se deja sin efecto el Laudo de Arbitraje impugnado, emitido por la Comisión de Relaciones del Trabajo del Servicio Público el 19 de abril de 2006.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones