SEAFARERS INTERNATIONAL UNION DE PUERTO RICO, peticionaria, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandada; PUERTO RICO MARBLE INDUSTRIES, INC. y ROYAL CROWN BOTTLING CO. (OF PUERTO RICO), INC., interventoras.

Número: JRT-66-3     Resuelto: 12 de junio de 1967

*Manuel De Jesús Mangual,* abogado de la peticionaria; *J. B. Fernández Badillo, Procurador General, J. F. Rodríguez Rivera, Procurador General Interino, Luis M. Rivera Pérez, Marta Ramírez de Vera* y *Celia Canales de González,* abogados de la demandada; *Cohen & Lespier* y *Harold Toro Toro,* abogados de las interventoras.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En 29 de julio de 1963 suscribieron un convenio colectivo la Royal Crown Bottling Co. (of Puerto Rico) y la Unidad General de Trabajadores de Puerto Rico (U.G.T.) afiliada a la United Brewery Workers of America (AFL-CIO), Local

611, para sí y en representación de su local Unión de Traba-
jadores de la Industria Gaseosa de la Royal Crown Bottling
Co. (of Puerto Rico). En el Art. V del convenio se convino
que la Compañía deduciría de los jornales de los empleados
cubiertos por el mismo, que hubieren dado su consentimiento,
la cuota semanal y de iniciación que los empleados adeuda-
ren como miembros de la Unión, y entregaría el importe cada
semana en un cheque pagadero a "Unidad General de Traba-
jadores de Puerto Rico (U.G.T.) afiliada a United Brewery
Workers of America (AFL-CIO), Local 611."

Desde el 8 de abril de 1963 la Junta Nacional de Relacio-
nes del Trabajo había certificado a la U.G.T. afiliada a United
Brewery Workers of America como representante de estos
obreros. En 7 de abril de 1964 la U.G.T. terminó su afilia-
ción con Brewery Workers y se afilió a Seafarers International
Union of North America, A.G.L.I.W. District, P.R. Division
AFL-CIO (S.I.U.). La Junta Nacional enmendó la certifi-
cación originalmente expedida conforme a la nueva afiliación
de la U.G.T.

En 7 de abril de 1964 comparecieron la Unidad de Trabaja-
dores de Bebidas Refrescantes Royal Crown Bottling Co.,
la Unidad General de Trabajadores de Puerto Rico (U.G.T.)
y la Seafarers (S.I.U.) y acordaron instruir a la Compañía
y compañías con quienes tenían convenios vigentes que las
cuotas descontadas a los trabajadores en cada compañía fue-
ran remitidas mediante cheque pagadero a la orden de "Uni-
dad General de Trabajadores de Puerto Rico afiliada a la Sea-
farers International Union of North America, Atlantic, Gulf,
Lakes and Inland Water District, Puerto Rico Division", en
Fernández Juncos 1313, Parada 20, Santurce. Manifestaron
que dicho acuerdo de instrucción se hacía en consideración a
que la S.I.U. había asumido la responsabilidad directa de
prestar todos los servicios a los trabajadores y promover los
intereses de los mismos al amparo del convenio vigente.

En 3 de septiembre de 1964 las partes en el anterior convenio colectivo de 29 de julio de 1963 convinieron en enmendar y enmendaron la comparecencia del convenio para que reflejara la nueva afiliación a la S.I.U. de la Unidad General de Trabajadores, y enmendaron el Art. V para que la Compañía expidiera semanalmente el cheque de los descuentos hechos a los empleados a "Unidad General de Trabajadores de Puerto Rico (UGT) afiliada a Seafarers International Union of North America-Puerto Rico Division". Así quedó enmendado el convenio colectivo con la Royal Crown.

En 20 de enero de 1965 Puerto Rico Marble Industries, Inc., y la Unidad General de Trabajadores de Puerto Rico así afiliada a la S.I.U. suscribieron un convenio colectivo en el cual, en su Art. V, acordaron el descuento semanal por la Compañía de cuotas a los empleados, y el importe de dicho descuento se entregaría por el patrono mensualmente en cheque pagadero a "Unidad General de Trabajadores de Puerto Rico (UGT) afiliada a Seafarers International Union of North America, A.G.L.I.W. District, P.R. Division, AFL-CIO".

Allá por el mes de junio de 1965, la U.G.T. y la S.I.U. desconvinieron. Ambas comparecieron a la Junta Nacional en solicitud de enmienda de la certificación. La S.I.U. produjo evidencia de que los obreros de las unidades representadas habían votado por terminar la afiliación con la U.G.T. y afiliarse a la S.I.U. La U.G.T. por su parte, se opuso a la petición de la S.I.U. y reclamó el derecho exclusivo de representar las unidades envueltas basándose en que su afiliación en 1964 con la S.I.U. había sido un mero arreglo comercial.

En 20 de septiembre de 1965 la Junta Nacional desestimó ambas peticiones por entender que las mismas tendían a presentar un problema de representación prohibido en ese momento por la regla del "año de elección" de la Sec. 9 (c) (3) de la Ley. La Junta rechazó el argumento de la U.G.T. al efecto de que su afiliación con la S.I.U. había sido sólo un acuerdo

comercial. Por otro lado expresó que de acuerdo con los récords la U.G.T. continuaba siendo la representante certificada no obstante su afiliación a la S.I.U., que dicha Unión existía y aún reclamaba representar a las unidades cubiertas por las certificaciones. De esta decisión del Director Regional desestimando tanto la petición de la S.I.U. como la de la U.G.T., la S.I.U. apeló ante la Junta. (1)

En las circunstancias descritas, ocurrió lo esperado. Tanto la U.G.T. como la S.I.U. reclamaron por separado de los patronos Royal Crown y Marble Industries que les satisficieran las cuotas descontadas, a cada una, con exclusión de la otra.

En 7 de octubre de 1965 la Royal Crown compareció ante la Junta demandada, expuso la situación y solicitó, en descargo de su responsabilidad, que la Junta ordenara a las dos Uniones que, ante ella, reclamaran y dilucidaran entre sí sus respectivos derechos a las sumas envueltas, que en ese momento el patrono consignaba y las que consignaría en el futuro. Alegó la Royal Crown que nuestra decisión en *J.R.T.* v. *A.M.A.*, 91 D.P.R. 500 (1964) la había privado del remedio clásico en situaciones como éstas, de solicitar judicialmente la reclamación entre sí, (*interpleader*), con la consignación correspondiente. La Junta, en 8 de octubre de 1965 desestimó la petición por no haber caso alguno ante ella. (2)

---

(1) El récord no demuestra acción alguna de la Junta Nacional a la fecha en que la Junta aquí demandada tomó las decisiones que se revisan, ni a esta fecha.

(2) No obstante nuestra expresión en *J.R.T.* v. *A.M.A.* al efecto de que a la Junta le fue conferida jurisdicción para *"prevenir y remediar* prácticas ilícitas del trabajo" y el amplio poder tutelar que sobre las relaciones del trabajo la Ley le concede, tanto por su acción desestimando la solicitud de la Royal Crown como por sus expresiones en el curso de la vista la Junta asume la firme posición de que carece de facultad para remediar una situación como ésta. Si en tal caso, negándose a actuar la Junta, puede el patrono acudir a la acción clásica judicial para que los reclamantes litiguen entre sí sus derechos, (*interpleader*), *Quaere*; aunque

A pesar de lo expuesto, la Junta posteriormente autorizó cargos de práctica ilícita contra ambos patronos por violación de los respectivos convenios colectivos, bajo el Art. 8(1) (f) de la Ley de Relaciones del Trabajo de Puerto Rico. Los patronos presentaron cargos contra cada Unión también por violación del convenio al pretender cada una para sí las cuotas.

Un Oficial Examinador, después de la vista de lugar, absolvió a las Uniones de los cargos, y declaró a los patronos incursos en la práctica ilícita de violar los convenios, si bien dispuso que había sido una violación técnica. Recomendó el Oficial Examinador que los patronos pagasen las cuotas retenidas a la U.G.T. La Junta así lo ordenó. En este recurso la S.I.U. impugnó la validez y corrección de dicha Orden. Veamos:

En el caso de la Royal Crown, el Oficial Examinador concluyó:

"3. La Unidad General de Trabajadores de Puerto Rico es el representante exclusivo de los trabajadores de producción y mantenimiento empleados por la Royal Crown Bottling Company en el Estado Libre Asociado de Puerto Rico. Su status como representante no ha sido afectado por los incidentes de desafiliación de la United Brewery Workers y afiliación y desafiliación de la Seafarers International Union.

---

quizás no sería lo más deseable. En estas circunstancias, y en ausencia de remedios, un patrono se ve obligado a afrontar un cargo de práctica ilícita y a defenderse del mismo, o de lo contrario exponerse a pagar dos veces.

Situaciones parecidas han ocurrido en otros sitios. Cf. *Glove Workers Union* v. *Wisconsin Board*, 45 L.R.R.M. 2731, pág. 2736, en donde se sostuvo que no obstante desestimar los cargos, la Junta de Wisconsin tenía poder para disponer de las cuotas, bajo su facultad de interpretar el convenio; *Local 464, ABC* v. *Hershey Chocolate*, 47 L.R.R.M. 2841, *Local 464, American Bakery, etc.* v. *Hershey Choc. Corp.* (Pa.), 169 A.2d 54, en donde se sostuvo que un remedio apropiado ante la situación era el devolver a los empleados los descuentos hechos. Cf. *Com. Agrícola Bianchi* v. *J.R.T.*, 92 D.P.R. 684 (1965).

4. Habiendo concluido la Junta Federal que los incidentes de afiliación y desafiliación entre la Unidad General de Trabajadores y la Seafarers International Union no afectaron el status de la UGT, el patrono Royal Crown Bottling Company estaba obligado a remitirle a dicha organización obrera las cuotas descontadas a sus empleados de producción y mantenimiento.

5. Al dejar de remitir las cuotas a la UGT, que era el representante certificado, el patrono Royal Crown Bottling Company violó el convenio colectivo y en consecuencia incurrió en una práctica ilícita de trabajo en el significado de la Ley, 29 L.P.R.A. 69(1) (f)."

Semejantes conclusiones hizo en el caso de *Marble*. ([3])

No hay controversia en cuanto a que estos patronos están en el comercio interestatal. Debe ser claro que todo lo referente a representación y afiliación es de la incumbencia de la Junta Nacional. *Bethlehem Co.* v. *State Board,* 330 U.S. 767; *La Crosse Tel. Corp.* v. *Wis. Board,* 336 U.S. 18; cf. *San Diego Unions* v. *Garmon,* 359 U.S. 236; cf. *Switchmen's Union* v. *Board,* 320 U.S. 297, págs. 303 y ss.

■ Las anteriores transcritas conclusiones del Oficial Examinador son erróneas como cuestión de derecho, porque mal interpretan la decisión de la Junta Nacional de 20 de septiembre de 1965. Esta decisión, y otra de la misma fecha en cuanto a otro patrono—Orange Crush of P.R. Inc.—son claras en el sentido de que la Junta Nacional se negó a certificar a la U.G.T. como representante exclusiva de estos obreros, y se negó a certificar a la S.I.U. como representante exclusiva de los mismos. Éste fue el fallo de la Junta Nacional. La expresión de que la U.G.T. aparecía como la Unión certificada a pesar de sus afiliaciones primero con la Brewery Workers y luego con la S.I.U. dicho en forma argumentativa en contestación a las pretensiones de la S.I.U. de que se le certificara como representante con exclusión de aquélla, no

---

([3]) Por resolución de este Tribunal de 28 de octubre de 1966, concedimos intervención a dichos patronos en este recurso.

tiene el efecto legal que le atribuyó el Oficial Examinador de haber la Junta decretado la representación exclusiva de la U.G.T. No procedía que la Junta demandada aceptara dichas conclusiones. El error le fue claramente ilustrado durante la vista por la representación legal de los patronos, a la luz de la evidencia.

La Sec. 302 de la Ley de Relaciones Obrero-Patronales, 61 Stat. 157, según enmendada, 29 U.S.C.A. § 186, declara ser ilegal para un patrono el pagar o traspasar dinero u otra cosa de valor al representante de cualquiera de sus empleados, a cualquier organización del trabajo o funcionario suyo, a cualquier grupo de empleados, y en otras situaciones nombradas. El incumplimiento de esta sección se castiga como delito menos grave con multa hasta $10,000 ó cárcel hasta un año, o ambas. Dispone la Sec. 302, sin embargo, que la misma no se aplicará . . . (4) en caso de descuentos del salario de los empleados en pago de cuotas de afiliación a una organización laboral, siempre que el patrono hubiera recibido de cada empleado una cesión por escrito que no será irrevocable por un período mayor de un año, o más allá de la terminación del convenio colectivo aplicable, lo que de esas dos cosas ocurriere primero. (⁴)

Los patronos hicieron claro a la Junta que de imponérseles la recomendación del Oficial Examinador se expondrían a incurrir en la violación criminal de la Sec. 302 de la Ley federal, lo cual podría ocurrir. Hicieron saber que las autorizaciones escritas que tenían de los empleados para el descuento, según lo exige dicha Sec. 302, lo autorizaban a favor de la U.G.T. afiliada a la S.I.U., tal como también aparece acordado en los respectivos convenios, que también requieren el con-

---

(⁴) La Ley Núm. 17 de 17 de abril de 1931 según ha sido posteriormente enmendada, 29 L.P.R.A. sec. 175, prohibe la retención de salario excepto . . . .

(d) Cuando en un convenio colectivo entre un patrono y un representante de sus empleados en una unidad apropiada para la negociación colectiva se estipulare la deducción de cuotas.

sentimiento de los obreros para el descuento. De haber los patronos pagado las cuotas a una de las dos Uniones, el acto hubiera constituido una violación del convenio en cuanto a la otra, y una violación del consentimiento dado bajo la Sec. 302. Irónicamente, la recomendación del Oficial Examinador y la Orden de la Junta de que se pague a una de las dos Uniones en un cargo por violación del convenio, tienen este mismo efecto, el de violar el convenio en cuanto a la otra. Para proteger al patrono en una situación como ésta contra la responsabilidad penal que le impone la Sec. 302, se dispone en *Local 464, ABC* v. *Hershey Chocolate*, ante, que un medio sea el devolver las cuotas retenidas a los empleados. Cf. *Grajczyk* v. *Douglas Aircraft Co.* (U.S.C.D.-S.D.C.), 210 F. Supp. 702.

■ En las circunstancias del récord no procedía declarar a los patronos Royal Crown y Marble incursos en una práctica ilícita por violación de los convenios. Aun así, dentro del procedimiento, y como cosa incidental, la Junta podía disponer en lo referente al pago de las cuotas. *J.R.T.* v. *A.M.A.*, ante; cf. *Glove Workers Union* v. *Wis. Board*, supra.

■ La manera de disponer no fue correcta. La orden de pagarle a la U.G.T. exclusivamente, aparte de ser contraria a los convenios, tiene el efecto legal inevitable aun cuando así no se intentara hacerlo, de resolver una disputa de representación y afiliación de obreros en el comercio interestatal, efecto éste que es contrario a derecho por corresponder la determinación a la Junta Nacional, y sin que la Junta demandada tuviera ante sí, en el supuesto que estuviese facultada para ello, los elementos de evidencia necesarios para resolver tal disputa en favor de una de las reclamantes.

*Procede que se dictamine que los patronos aquí envueltos no violaron sus convenios colectivos con estas Uniones, y que quede sin efecto la Orden de la Junta para que las cuotas sean satisfechas a la U.G.T. con exclusividad.* Se devuelve el caso

para que la Junta ordene que los cheques sean expedidos a "Unidad General de Trabajadores de Puerto Rico (UGT) afiliada a Seafarers International Union of North America-Puerto Rico Division" según reza el Art. V enmendado del convenio colectivo de Royal Crown, y a "Unidad General de Trabajadores de Puerto Rico (UGT) afiliada a Seafarers International Union of North America, A.G.L.I.W. District, P.R. Division, AFL-CIO", según reza el Art. V del convenio colectivo con Marble.

Si no existiera ya tal entidad laboral, la Junta, dentro de sus prerrogativas y poder tutelar sobre las relaciones del trabajo podrá, con la intervención de las uniones reclamantes, hacer aquella disposición de los fondos y conceder aquellos remedios que sean justos y razonables para que se cumplan mejor los fines y propósitos de los convenios colectivos con estos obreros o, podrá disponer que las uniones obtengan de la Junta Nacional la certificación que proceda y una determinación de sus respectivos derechos a tenor de la Sec. 302 ya mencionada o, podrá adoptar cualquier otra solución válida en derecho que sea apropiada.

*Se dictará sentencia de conformidad.*

