El Señor Juez Presidente y los Jueces Asociados Señores Hernández Matos y Rigau no intervinieron.

Junta de Relaciones del Trabajo de Puerto Rico, peticionaria, *v.* Cadillac Uniform and Linen Supply, Inc., demandada.

*Número:* O-69-113        *Resuelto:* 10 de diciembre de 1969

*José F. Rodríguez Rivera, Procurador General Interino, Celia Canales de González, Marta Ramírez de Vera y José E.*

*Rodríguez Rosaly,* abogados de la peticionaria; *Goldman, Antonetti & Subirá, Rafael F. Morales Cabranes* y *David F. Barreto,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 3 de enero de 1968 la Junta de Relaciones del Trabajo dictó una decisión declarando a la Cadillac Uniform & Linen Supply, Inc., incursa en la práctica ilícita de violación de convenio, Art. 8(1) (f) de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 69(1) (f), y, en consecuencia le ordenó

"1.—Cesar y desistir de:

(a) En manera alguna violar los términos del convenio colectivo que tiene firmado con el Congreso de Uniones Industriales de Puerto Rico.

2.—Tomar la siguiente acción afirmativa:

(a) Remesar al Congreso de Uniones Industriales de Puerto Rico el importe de las correspondientes cuotas en consonancia con el Artículo III del convenio.

(b) Reunirse con los representantes del Congreso de Uniones Industriales de Puerto Rico en el Comité de Quejas y Agravios para considerar las quejas que dieron margen a la radicación de la querella en los casos del epígrafe.

(c) Enviar por correo certificado al Congreso de Uniones Industriales de Puerto Rico y fijar inmediatamente en sitios conspicuos de su negocio y mantener fijados por un período no menor de treinta (30) días copia del Aviso que se adhiere a este Informe.

(d) Notificar al Presidente de la Junta dentro de los diez (10) días siguientes a la fecha de la orden qué providencias ha tomado para cumplir con lo ordenado."

Esta decisión y orden se pronunció en rebeldía de la querellada por no haber comparecido a contestar las querellas que se le formularon ni haber concurrido a la vista que se convocó para la ventilación de las mismas. Ante esta situación el oficial examinador había considerado como admitidas todas las alegaciones contenidas en las querellas—entre ellas, la relativa a la vigencia de un convenio colectivo entre la que-

rellada y el Congreso de Uniones Industriales de Puerto Rico, que representaba a los empleados tanto en las unidades de producción y mantenimiento como en la unidad de empleados de oficina—conforme a lo dispuesto en el Art. 9(1)(a) de la Ley, 29 L.P.R.A. sec. 70(1)(a), y en el Art. II, Sec. 2 (c) Reglamento Núm. 2 de la Junta, 29 R.&R.P.R. sec. 64–3(c).([1])

Cuarenta días después de la notificación de la decisión y orden transcritas, en 14 de febrero de 1968, la empresa quere-

---

([1]) La relación de hechos sobre el trámite de la querella que se hace por la Junta en su alegato corresponde fielmente a las constancias de los autos:

"El 4 de octubre de 1967 la División Legal de la Junta de Relaciones del Trabajo expidió dos querellas contra Cadillac Uniform and Linen Supply, Inc. Tanto en los avisos de audiencia que siguieron como en las querellas se notificó a dicha demandada que tenía un término de cinco (5) días para contestar. Se le apercibió en las querellas, además, que de no contestar en el plazo señalado se darían por admitidas las alegaciones en su contra y se entendería que renunciaba a la audiencia pública y al informe del Oficial Examinador. . . .

".     .     .     .     .     .

"El 11 de octubre de 1967 la Junta de Relaciones del Trabajo acordó consolidar los citados casos a los fines de audiencia y decisión. El 13 de octubre de 1967 el patrono querellado fue debidamente emplazado.

"El 22 de noviembre de 1967, en vista de que había transcurrido en exceso el término que contempla el reglamento de la Junta para que el patrono contestara la querella y que en momento alguno éste había solicitado una prórroga para contestar, la representación legal a la querellante radicó una moción en la cual solicitó que la Junta de Relaciones del Trabajo tomase nota del estado de rebeldía en que se situó el patrono querellado al no negar las alegaciones de las querellas en los casos del epígrafe. Solicitó la División Legal se anotase la rebeldía del patrono querellado y se diesen por admitidas todas las alegaciones de las respectivas querellas. El 27 de noviembre de 1967 el patrono querellado radicó un escrito en oposición a la moción sobre rebeldía previamente radicada por la División Legal de la Junta.

"Mediante resolución al efecto, el 30 de noviembre de 1967 la Junta de Relaciones del Trabajo refirió al Oficial Examinador las mociones del 22 y 27 de noviembre.

"La audiencia en ambos casos estaba señalada para comenzar a las 8:30 A.M. del lunes 4 de diciembre de 1967. A esa hora el patrono querellado no se encontraba en sala. El Oficial Examinador procedió a esperar hasta las 9:25 A.M., y a esa hora el patrono no había acudido a la audiencia ni había excusado su ausencia."

llada compareció, a través de representación legal distinta, para solicitar la reapertura del caso y la celebración de una vista en los méritos. En 28 de febrero de 1968 la Junta declaró sin lugar esta moción, pero señaló una audiencia para que la querellada mostrara causas por las cuales no podía cumplir con la antedicha orden. En la vista, luego de admitir la intervención de la United Steelworkers of America AFL-CIO—bajo la alegación que desde abril de 1967 representaba a los empleados de producción y mantenimiento de la empresa y que administraba un convenio que había comenzado a regir en 1 de septiembre de 1967 (²)—se concedió término a las partes para someter memoriales sobre las cuestiones de hecho y de derecho relacionadas con el cumplimiento de la orden. Otra vista se celebró el 2 de agosto siguiente y durante la misma se admitieron en evidencia ciertos documentos que las partes habían unido a sus memoriales "al solo propósito de que se utilicen al rendirse el informe que [el] Oficial Examinador debe rendir a la Junta de Relaciones del Trabajo como trasfondo del proceso de interacción que ocurrió entre las partes, querellante, querellada e interventora" y se solicitó la presentación de memorandos sobre la posición adelantada por el patrono de que no podía cumplir la orden por haber ocurrido una rescisión del convenio.

En 4 de diciembre de 1968 el oficial examinador rindió un extenso informe a la Junta en el cual concluyó que la empresa no había mostrado causas por las cuales no podía cumplir la orden de la Junta de 3 de enero anterior. La querellada ex-

---

(²) En abril de 1967, unos días después de comenzado un movimiento de abstención al trabajo por miembros del Congreso de Uniones Industriales, la United Steelworkers of America presentó ante un juez de distrito tarjetas firmadas por un número de empleados de la división "linen department" de la compañía. El magistrado las cotejó con la nómina de la semana terminada el 15 de abril, y certificó que la Steelworkers contaba con el respaldo de la mayoría de los empleados de la compañía. Esta actuación respondió a una estipulación firmada por la compañía y dicha unión. Se trata de un curioso procedimiento *suí generis* de decertificación y certificación de una nueva unión.

cepcionó el informe. Con vista de los autos la Junta dictó en 12 de febrero de 1969 una decisión y orden suplementaria manteniendo *in toto* la original.

En 20 de mayo de 1969, ante la persistente actitud de la querellada de incumplir la orden de 3 de enero de 1968, la Junta nos solicitó que la pusiéramos en vigor. El patrono adujo varios motivos, que, a su juicio, impiden que se acceda a ello.

■ 1. No podemos convenir en que bajo los hechos expuestos la Junta incidiera al negarse a reabrir el caso. La desatención manifiesta de la querellada durante todo el trámite que culminó en la decisión y orden de 3 de enero de 1968 no justificaba el ejercicio de la discreción de la Junta para reabrir el caso y conceder una vista. Esta actitud contrasta notablemente con la observada por ella ante la Junta de Relaciones del Trabajo federal, en donde se prosiguió con ahinco y diligencia un cargo contra la unión por una alegada violación de la Sec. 8(d) de la ley federal,(³) 29 U.S.C. sec. 158(d). Véase, *Graficart Corp.* v. *J.R.T.*, 97 D.P.R. 473 (1969).

■ 2. Sostiene la empresa que no puede dar cumplimiento a la acción afirmativa requerídale para remesar el importe de las cuotas correspondientes (*check-off*) "en consonancia con el Art. III del convenio", fundándose en que una nueva unión es la representante de los empleados, y es a esta unidad a la que se le envían las cuotas, en cumplimiento del convenio vigente desde el 1 de septiembre de 1967. No existe tal conflicto. Presumiendo que la sustitución de la unidad contratante se hubiese hecho conforme a las disposiciones de la

---

(³) La junta federal tenía jurisdicción por tratarse de una empresa en el comercio interestatal, pero el organismo local podía intervenir en lo relativo a la práctica ilícita de violación de convenio. *Beaunit of Puerto Rico* v. *J.R.T.*, 93 D.P.R. 509 (1966); *J.R.T.* v. *Unión Local 847*, 91 D.P.R. 772 (1965); *J.R.T.* v. *A.M.A.*, 91 D.P.R. 500 (1964); *P.R. Telephone* v. *Junta Rel. Trabajo*, 86 D.P.R. 382 (1962), y el caso normal de *Junta Rel. del Trabajo* v. *I.L.A.*, 73 D.P.R. 616 (1952).

Sec. 9 (c) de la Ley federal, 29 U.S.C. sec. 159 (c), para cambio de representante laboral, véase el escolio 2, se observará de inmediato que el alcance de la orden de remesar se limita a la unidad de empleados de oficina, cubierta por el Art. III del convenio de abril de 1966 (Exh. J-8), y no a la unidad de producción y mantenimiento, cubierta por el Art. V del convenio de 20 de marzo de 1966 (Exh. J-7) que es la unidad representada por la United Steelworkers of America AFL-CIO. La orden no tiene, por tanto, el efecto de resolver una disputa de representación y afiliación de obreros cuya determinación corresponde a la Junta federal. *Seafarers Int. Union de P.R.* v. *J.R.T.*, 94 D.P.R. 697 (1967). ([4])

■ Aduce también la recurrida que su obligación de honrar el convenio sólo subsistió hasta el momento en que, por haber declarado la Unión una huelga ilegal desde el 28 de marzo de 1967, perdió su vigencia. ([5]) Varias razones desvanecen la fuerza de este planteamiento: 1—como cuestión de hecho, la Junta determinó que el convenio continuó teniendo efectividad y no fue afectado por los alegados actos de huelga del Congreso de Uniones Industriales de Puerto Rico, y esta determinación no puede variarse en un incidente de cumplimiento de la orden; 2—existe la presunción de continuidad del convenio colectivo; véase, Anotación, *Continuance or termination of labor union status or authority as bargaining agent*, 42 A.L.R.2d 1415; 3—La Junta federal, al resolver el cargo de violación a la Sec. 8 (d) imputado a la Unión, expresamente declaró que "No hay prueba para sostener la alegación de que la unión intentó dar por terminado o terminó o modificó el convenio colectivo vigente. Tampoco aparece que el propósito de la huelga fuera obligar a la compañía a modifi-

---

([4]) Aun cuando existiera un conflicto respecto a la remisión de cuotas, no creemos que la demandada incurriera en riesgo alguno, vistas las disposiciones del Art. 302 (c) (2) de la Ley federal, según enmendada en 1959.

([5]) El patrono envió una notificación a la Unión en 10 de abril de 1967 considerando rescindido el convenio.

car o cambiar algunas de las cláusulas de dicho contrato. Más bien la prueba sostiene la conclusión que la huelga fue declarada en protesta de la actuación de la compañía al cambiar las condiciones de trabajo de dos de los empleados, miembros de la Unión"; 4—para la sustitución de representación no se siguió el procedimiento provisto por la Sec. 9 (c) del estatuto federal, *supra*, sino un procedimiento *sui generis* de cuestionable validez.

■ 3. Indica la querellada que la conducta patronal alegadamente ilícita—negativa a negociar que da base al requerimiento a la querellada para que se reúna con los representantes de la Unión—está específicamente prohibida por el estatuto federal, y, por ende, no corresponde sancionarla a la Junta estatal. Pierde de vista que la práctica ilícita imputada no fue la de negativa a negociar, sino la de violación de convenio consistente en "negarse a reunirse . . . en el Comité de Quejas y Agravios, en violación del Art. IX [del convenio], para discutir las violaciones y querellas, optando por la rescisión unilateral de dicho convenio colectivo".

*Se dictará sentencia poniendo en vigor la orden de la Junta de Relaciones del Trabajo de 3 de enero de 1968.*

El Señor Juez Presidente y los Jueces Asociados Señores Hernández Matos y Ramírez Bages no intervinieron.